**FILED**

OCT 3 1 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KAY SIEVERDING
Clear Creek County Jail
PO Box 518
405 Argentine Street
Georgetown, CO 80444

    and

DAVID SIEVERDING,
601 Basswood Avenue
Verona, WI 53593
(608) 848-5721

    *Plaintiffs,*

    v.

AMERICAN BAR ASSOCIATION,
AKA ABA
740 15th Street N.W.
Washington, DC 20005
202-862-1000

    and

WHITE and CASE LLP,
701 13th Street NW
Washington, DC 20005
(202) 626-3600,

    and

O'BRIEN, BUTLER, McCONIHE and
SCHAEFFER, AKA O'BRIEN, BUTLER
888 17th Street NW
Washington, DC 20006-3939
(202) 298-6161,

    *Defendants.*

**Jury Demand**

CASE NUMBER  1:05CV02122

JUDGE: Ricardo M. Urbina

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 10 31 2005



1

# COMPLAINT

This case is a federal issue brought under 42 USC § 1985, 42 USC § 1983 and 42 USC § 1982 because the ABA, White and Case, LLP, and O'Brien, Butler conspired with Colorado Federal Court Judge Edward Nottingham to obstruct justice under 42 USC § 1985 and, in the course of obstructing justice under 42 USC § 1985. Through the threat of imprisonment, this conspiracy intentionally sought to force both David Sieverding and Kay Sieverding to individually surrender their property rights, which took the form of a cause of action, in violation of 42 USC § 1982.

Additionally, through the threat of imprisonment, this conspiracy intentionally sought to force both David Sieverding and Kay Sieverding to withdraw from court proceedings in violation of 42 USC § 1985, obstruction of justice. This conspiracy succeeded in forcing David Sieverding to withdraw in further violation of 42 USC § 1985. And, by jailing Kay Sieverding, interfered with the proficiency of her efforts to participate in court proceedings, also in further violation of 42 USC § 1985. And, by continuing to jail Kay Sieverding, is preventing her from attending future hearings, trials and the like, also in further violation of 42 USC § 1985.

"The action against the private parties accused of conspiring with the judge is not subject to dismissal. Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of 1983 actions. And the judge's immunity from damages liability for an official act that was allegedly the product of a corrupt conspiracy involving bribery of the judge does not change the character of his action or that of his co-conspirators. Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge. Nor has the doctrine of judicial immunity been considered historically as excusing a judge from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided." *United States Supreme Court DENNIS v. SPARKS, 449 U.S. 24 (1980)*

Both David and Kay Sieverding live in Wisconsin. Washington DC is a proper

venue under 28 U.S.C. § 1391 (b)(2) because the defendants were obligated to protest,

and not to participate in, the obstruction of justice, wrongful imprisonment, violation of

property rights and deprivation of civil rights, both at the time that they obtained

knowledge that these acts were going to occur in some form and immediately after they

became aware that the acts did occur. Instead, the ABA, through their attorney, White

and Case, LLP, filed a motion in one of the cases where obstruction of justice has

occurred, District of Columbia case 05-1283, asking for an expansion of time saying:

"the ABA also expects that following the September 2, 2005 contempt hearing,
Plaintiffs either will voluntarily withdraw their patently frivolous action before this Court
or will be ordered to do so by the Federal District Court of Colorado… Therefore, for
cause shown above, the ABA represents that this Court also grant the ABA an extension
of time until September 7, 2005 hearing." Docket item 13, District of Columbia Case 05-
1283 RMU

Likewise, O'Brien, Butler, McConihe & Schaefer, LLP, also ratified the obstruction

of justice as indicated by their motion for an expansion of time, saying:

"Defendants… expect that the Plaintiffs here will soon – at least following the
September 2, 2005 contempt hearing – be faced with the need to purge themselves of their
contempt of the District of Colorado injunction. As a result, Defendants here expect that
these Plaintiffs will shortly either voluntarily dismiss the instant action in this Court, or
be ordered to do so." Docket item 8, District of Columbia Case 05-1283 RMU

At the request of defense counsel in a related case, District of Colorado case 02-

cv-1950, and with the prior knowledge and ratification of the defendants, Judge

Nottingham is holding Kay Sieverding for contempt of court until such time that she

"voluntarily" agrees to withdraw from her lawsuits. This act is obstruction of justice

under 42 USC § 1985.

Furthermore, the order that forms the basis of the alleged contempt does not cite a legal basis and, in fact, violates the First and Fourteenth Amendments as well as 28 U.S.C. § 1654 which gives people the right to sue with or without a lawyer and 42 U.S.C. § 1981 which gives everybody the same right to sue as "white people". "White people" can sue with or without a lawyer and on events in another related lawsuit. The right to sue is sacred and cannot be selectively abridged. Consequently, to hold someone in contempt for violating this order is wrongful imprisonment under 42 USC § 1985, in addition to obstruction of justice under the same law.

Thus, instead of protesting, the defendants ratified the obstruction of justice, both before and after it occurred, and sought to benefit from it in a civil action. Beyond violating 42 USC § 1985 obstruction of justice and wrongful imprisonment, defendants forced David Sieverding and sought to force Kay Sieverding into surrendering a property right in the form of a cause of action. This violated 42 USC 1982, which states:

**"Section 1982. Property rights of citizens**
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property. 42 USC § 1982"

Logically, pro se litigants would have the same rights as white citizens.

Beyond this, violations of 42 USC § 1985, 42 USC § 1982, 42 USC § 1981 and 28 U.S.C. § 1654 done in conspiracy with a Federal Judge are also violations of 42 USC § 1983, which says:

**"Section 1983. Civil action for deprivation of rights**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an

4

act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 USC § 1983

The acts and omissions that occurred in Washington DC are sufficient to establish jurisdiction under 28 U.S.C. § 1391 (b)(2).

1.    Neither Congress nor the Supreme Court gave lawyers immunity for intentional torts. The trend is to reduce immunities.

2.    The standard commonly used West Law Hornbook Textbook the Law of Torts by Dan Dobbs states clearly that lawyers are liable to a third party is for prosecuting a case in ways not authorized by law just as if they ran the third party over with their car in the parking lot.

3.    The ABA-members only web site discusses attorney liability in tort.

4.    The civil rights laws enacted after the Civil War clearly anticipated civil liability for lawyers.

5.    At the time of the Revolutionary War there were professional lawyers in England.

6.    The founding fathers clearly anticipated and authorized pro se litigation.

7.    United States Law 28 U.S.C. 1654 authorizes pro se litigation.

8.    According to the Wall Street Journal, last year the federal court system processed 21,000 non-prisoner pro se cases.

9.    The New Hampshire State Judiciary reported that in 2004 fully 85% of all civil lawsuits involved at least one pro se litigant.

10.    Federal civil rights law 42 U.S.C. § 1985 says:

**"42 U.S.C. Section 1985. Conspiracy to interfere with civil rights**

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

6

11.    Sieverdings filed several related actions pro se.  These included 02-CV-1950 in the District of Colorado, 04-CV-4317 in the District of Minnesota (appeal 05-CV-2824), 05-CV-01283 and 05-CV-01672 in the District of Columbia.

12.    All of these complaints allege judicial misconduct.  In none of the cases were the facts disputed.  The Sieverdings verified all of these pleadings under penalty of perjury.

13.    In none of these cases were perjury or fraud by the Sieverdings alleged.

14.    In District of Columbia cases 05-CV-01283 and 05-CV-01672, White and Case and O'Brien, Butler, McConihe and Schaeffer represented the defendants.

15.    The combined demand in 04-CV-4317/appeal 05-CV-2824 and 02-CV-1950/05-CV-01267 with interest exceeds $20 million.

16.    In both 04-CV-4317/appeal 05-CV-2824 and 02-CV-1950/05-CV-01267 the Sieverdings filed summary judgment in the sum certain amounts.

17.    In neither 04-CV-4317/appeal 05-CV-2824 and 02-CV-1950/05-CV-01267 did the defense counsel dispute the amount of their claims.

18.    In both 04-CV-4317/appeal 05-CV-2824 and 02-CV-1950/05-CV-01267 the economic personal and punitive damages were within the ranges allowed by law.

19.    Under the Principles of Waiver and Equitable Estoppels the defendants in 04-CV-4317/appeal 05-CV-2824 and 02-CV-1950/05-CV-01672 can no longer dispute the facts.

20.    In all the related actions the conduct alleged was sufficient to have a lawyer disbarred.

21.    In 02-CV-1950 the Court, after substantial ex parte collusion, issued a vague order stating that Sieverdings were not allowed to be able to file additional pro se actions "based on" the same series of events.

22.    The court order did not comply with Rule 65 in either procedure or form.

23.    There was no hearing on the motions filed related to that order.

24.    The hope for an order banning future pro se litigation was discussed in the defense bills (which the plaintiffs obtained after the case was closed), but not officially on the record.

25.    There is no legal precedent for such an order.

26.    Although the right to make a living as a lawyer is not a fundamental right, in order to disbar an attorney, even temporarily, a full evidentiary hearing with counsel in front of a nine-person court is required.

27.    The right to pro se litigation is established both by the First Amendment, The Fourteenth Amendment Privileges and Immunities Clause and 28 U.S.C. § 1654

28.    Rule 65 requires a statute, statement of irreparable harm to the moving party should the injunction not issue, and a clearly established right to the moving party, an evidentiary hearing and a balancing of the rights of the rights of the nonmoving party.

29.    An injunction cannot be issued unless there is a final decision on the merits.

30.    The defense has the burden of proof that a decision is based on the merits.

31.    Rule 65(d) states that an injunction must state clearly what is enjoined and why without referencing any other document.

Case 1:05-cv-02122-RMU     Document 1     Filed 10/31/2005     Page 9 of 23

32.    A court order that is not based on a motion must be on a separate piece of paper.

33.    Conditions 22 and 28 to 32 were not met.

34.    White and Case and O'Brien, Butler and the ABA knew that conditions 22, and 28 to 32 were not met.

35.    The Sieverdings did not appeal the order about pro se litigation based on the same series of events to the 10th Circuit because they knew it was so vague as to be meaningless and because they wanted to use their word allocation to get summary judgment in their favor.

36.    In their 02-CV-1950/Appeal Motion for Rehearing En Banc, the Sieverdings told the 10th Circuit they did not think they had a need to appeal to it because it was so vague as to be meaningless.  The 10th Circuit did not respond to that.

37.    White and Case and O'Brien, Butler and the ABA knew that the order about pro se litigation was not appealed to the 10th Circuit.

38.    Both White and Case and O'Brien, Butler represented to the District of Columbia that the 10th Circuit and other courts had affirmed the order and that it was a legitimate order.  The defendants never believed that there was a legitimate order.

39.    An order of another court is not evidence and each court is obligated to do an independent review of the law and facts.

40.    "By statute the federal courts are given power to punish contempts of their authority provided that such power to punish contemptors shall not be construed to extend to any cases except (1) the misbehavior of any person in their presence or so near thereto as to obstruct the administration of justice (2) the misbehavior of any of the

officers of the court in their official transactions and (3) the disobedience or resistance to

any lawful writ process order rule decree or comment of the court … those courts cannot

go beyond statutory boundaries in imposing punishment for criminal contempt … the

words are so 'near thereto' … a decision declaring that the words are to be given a

geographical meaning" *American Jurisprudence 2nd Volume 17 § 66-70.*

41.     In July 2005, Sieverding had an email exchange with the ABA's in-house

counsel Patricia Larson.  Sieverding asked Pat Larson to produce the required

components of a Rule 65 injunction but Larson was unable to do so.

42.     Before being sent to jail, Sieverding emailed to the counsel at the

defendants (Lamm and Kernan) and asked them to produce the so-called injunction with

the Rule 65 requirements but neither did.

43.     Because the Sieverdings are pro se, White and Case and O'Brien, Butler

and the ABA apparently thought that they wouldn't know or be able to find out the legal

principles discussed herein.

44.     White and Case and O'Brien, Butler and the ABA apparently thought that

the press would not be able to understand these principles and would not report what

happened.

45.     White and Case and O'Brien, Butler and the ABA tried to put down

plaintiffs by claiming that they couldn't understand what plaintiffs wrote, despite the fact

that both David and Kay Sieverding hold bachelors degrees from MIT and that Kay

Sieverding holds a Masters Degree from MIT and that Kay Sieverding is a published

author.

46.    If a litigant cannot understand a pleading, the appropriate response is to file a motion for a more definite statement.  That has not been done in any litigation plaintiffs have been involved with except once in early 2003, to which they properly replied.

47.    A client of White and Case, the American Bar Association, wrote to Colorado Federal Judge Nottingham and asked him to violate Rule 56 and Canon III (see attached).

48.    In that case, Federal Rules of Civil Procedure and Rules of Evidence were violated, as discussed in 05-CV-01283.

49.    Cases involving civil contempt are based on statutes such as those related to property division in marriage and testifying about criminal acts when the Fifth Amendment cannot be invoked.

50.    Criminal contempt requires notice and jury, full criminal procedure, and proof beyond a shadow of a doubt.

51.    Jailing for misbehavior in court requires an independent adjudicator.

52.    In the District of Colorado case 02-CV-1950, clients of O'Brien, Butler submitted pleadings asking that the Sieverdings be found in contempt of court for pursuing their actions in the District of Minnesota and the District of Columbia.

53.    Those pleadings violated Rule 7 because they did not state a rule.

54.    Sieverdings responded adequately to those pleadings, but neither the court nor the defense counsel recognized their response

55.    Colorado Federal Judge Nottingham scheduled an oral hearing on 09-02-05 to discuss defendants' motions to find the Sieverdings in contempt of Court.

11

56.    None of the defense motions mentioned jail.

57.    Faegre and Benson, LLC represented in 05-CV-01283 and 05-CV-01672 by O'Brien, Butler, wrote the most motions. In those motions, they asked District of Colorado Judge Nottingham for legal fees for District of Minnesota case 04-CV-4317 although they did not refer to Rule 54 and the District of Minnesota had previously refused their motion for legal fees, even after Faegre's partner in Minnesota sent packages to Judge Tunheim and requested a private phone call.

58.    At the oral hearing on 09-02-05, both Faegre and Benson partner Christopher Beall and McConnell Siderus associate Tracy Van Pelt asked Colorado Judge Nottingham to incarcerate the Sieverdings until they withdraw.

59.    Both Faegre and Benson and McConnell Siderus were listed as respondents in the Sieverdings' 60(b)(3) 05-CV-01283 motion for relief from 02-CV-1950 legal fees and were represented in that action by O'Brien, Butler.

60.    Faegre's 02-CV-1950 bills itemized conferencing with O'Brien, Butler.

61.    All 29 of the 02-CV-1950 defendants were served in 05-CV-01672. O'Brien, Butler originally represented most of them, but some switched to White and Case.

62.    Both White and Case and O'Brien, Butler filed motions for extensions of time stating that they hoped that on 9-2-05 the Sieverdings would be required to "voluntarily withdraw" their 05-CV-01283 and 05-CV-01672 complaints.

63.    The only legal authority cited by anybody on 9-2-05 was *U.S. v. United Mine Workers*, United States Supreme Court 1947. Kay Sieverding had previously read

that case and knows that it concerns a strike and has nothing to do with jailing someone for filing a lawsuit.

64.    The Anti-Injunction Act and the All Writs Act are both specific that a plaintiff cannot be jailed for filing a lawsuit.

65.    A disbarred lawyer cannot be jailed for filing a lawsuit.

66.    A prisoner appearing in forma pauperis, who has used up their free frivolous filings allocation, cannot be criminally punished for filing another. A prisoner who pays, like Sieverdings did, can file as many actions as they deem appropriate.

67.    The history of American law has been to support access to the courts and all high court decisions regarding access to courts have supported access. For instance, not only are the courts required to consider a complaint that may be res judicata, but the defense has the burden of proof. Complaints to overturn judgments on the basis of fraud can be filed years later. The Supreme Court specifically ruled in *NAACP v. Button* that the courts cannot dictate the practice of law.

68.    Jailing someone for filing a lawsuit is in the dark regions of American history along with lynching.

69.    American Jurisprudence discusses threat of jail is as a type of duress under which a contract is invalid.

70.    Nevertheless, on 9-2-05 Federal District of Colorado Judge Nottingham incarcerated Kay Sieverding for filing lawsuits in other courts.

71.    On 9-2-05 Colorado Judge Nottingham repeatedly threatened David Sieverding with jail if he did not agree to withdraw from the various actions.

72.    Because David Sieverding is terrified of jail and also has to work to support his family, he did file withdrawal motions in all the cases.

73.    Kay Sieverding has, as of 10-7-05, been in jail for nine weeks.

74.    During the time that Kay Sieverding has been in jail, she has not been summoned for additional court hearings, as is normal in a civil contempt holding.

75.    On 9-2-05 neither Sieverdings were allowed to cross-examine their accusers.

76.    On 9-2-05 Kay Sieverding quoted Federal Procedure Lawyers Edition adequately to prove that there was no valid injunction.

77.    On 9-2-05 Kay Sieverding quoted the 5-31-05 Supreme Court decision *Troy v. Cochran* which said there is no time limit for contesting an injunction "A person subject to a court's injunction may elect whether to challenge the constitutional validity of the injunction when it is issued or to reserve that claim until violation of the injunction is charged as contempt of court."

78.    Judges aren't supposed to create laws. Judges do not have a common law power to label acts as criminal. Criminal statutes are very carefully written and are unconstitutional if they are vague.

79.    Jail is a criminal penalty.

80.    On 9-2-05 Kay Sieverding noted that, in 02-CV-1950, plaintiffs had filed a motion to get evidence of any misconduct on their part, but both the defense and the court ignored their motion.

81.    On 9-2-05 Kay Sieverding noted that, in 02-CV-1950, the magistrates Report and Recommendation had referred to two letters he received from the defense

14

counsel. Those letters were not in the record. As repeated on 09-02-05, Sieverdings had

filed a motion to get a copy of those letters but the defense and court ignored their

motion.

82.    On 9-2-05 Sieverdings were not allowed to discuss the substance of their

related disputes. Although the defense counsel spoke extensively, the judge limited both

the time and the substance of the Sieverdings' defense.

83.    On 9-2-05 Sieverdings supplied a copy of the Department of Justice Civil

Resource Manual 215 on mandamus. That document states "courts have no authority to

grant relief in the nature of mandamus if the plaintiff has an adequate legal remedy aside

from the mandamus if the plaintiff has an adequate legal remedy aside from mandamus,

such as a suit for monetary judgment or the opportunity to raise the legal issues involved

in a suit brought by the government." *U.S. ex rel Girard Trust Co. v. Helvering*, U.S.C.

301 U.S. 540, 544 (1937). If the Sieverdings had filed fraudulently in their cases,

defendants were required to plead that with specificity under Rule 9. But they did not.

They also did not allege perjury.

84.    "The power of district court compel official action by mandatory order is

limited to the enforcement of non-discretionary, plainly defined, and purely ministerial

duties." See *Decatur v. Paulding* 39 U.S. 1 Pct. 496, 514, 17 (1840). *Work v. Rivers*,

267 175, 177 (1925), *Wilber v. United States*, 281 U.S. 206, 218 (1930).

85.    Lawyers from White and Case and O'Brien, Butler filed in the District of

Columbia cases 05-CV-01283 and 05-CV-01672 proclaiming jubilantly that Kay

Sieverding is in jail.

86.    White and Case and O'Brien, Butler made the obvious fraudulent statements that a withdrawal from a civil suit can be "voluntary" if it is motivated by a jailing threat or as a condition of getting out of jail. That's like saying that sex at knifepoint is voluntary.

87.    There was no discussion on 09-02-05 of any defects in the other lawsuits that the Sieverdings filed.

88.    In the other lawsuits the Sieverdings filed, there was no defense discussion, with any particularity, of any defects in the Sieverdings' complaints.

89.    In the other lawsuit the Sieverdings filed, there is evidence of violations of Canon III. In the 04-CV-4317 lawsuit filed in the District of Minnesota, Faegre and Benson, a codefendant as well as counsel, sent packages to a Federal Judge and wrote a letter requesting a private phone call about the case. When Sieverdings complained, a Faegre and Benson partner said it was mundane.

90.    Denial of honest services by a judge is a felony.

91.    In 05-cv-01283, if due process had been observed in District of Colorado case 02-cv-1950, the defense could have submitted an affidavit to that effect.

92.    The plaintiffs had filed a complaint in the District of Northern Illinois, 05-CV-5677. Faegre partner Chris Beall filed a motion in the District of Colorado saying that he discussed the case with the District of Northern Illinois.

93.    Faegre partner Chris Beall wrote that he had called the District of Columbia and asked them to dismiss plaintiffs' 05-CV-01283 complaint.

16

94.    The Model Code of Professional Conduct written and promulgated by White and Case client, the American Bar Association, specifically requires that lawyers not solicit a criminal penalty to gain advantage in a civil dispute.

95.    Similar Rules of Professional Conduct in the District of Columbia and states of Colorado and Minnesota also require that lawyers not solicit a criminal penalty to gain advantage in a civil dispute.

96.    The 05-CV-1283 complaint details the billing by Hall and Evans for calls to the court to discuss motions, conference calls and long distance calls to the court.

97.    The 05-CV-01283 complaint includes a copy of a verified legal bill by Steamboat Springs Colorado lawyer Anthony Lettunich for discussion with Hall and Evans partner David Brougham about Federal Magistrate Schlatter's clerk communicating with the defense that they wouldn't have to reply.

98.    The same bills from Lettunich discuss the plan to get the court to impose restrictions on future filings.

99.    Relaying messages through the clerk is specifically against Canon III.

100.    The 05-CV-01283 filings include the letter from Faegre and Benson to Federal Judge Tunheim requesting the private phone call.

101.    The 05-CV-01283 filings include the letter from ABA in-house assistant counsel Patricia Larson to Judge Nottingham, who presided on 09-02-05 asking Judge Nottingham to suspend Rule 56 Procedure and to relay messages through his clerk.

102.    In 1948, Congress specified that Rules 56 Summary Judgment Procedure is to be open to plaintiffs as well as defendants and, as discussed in Moore's Federal

Procedure, a defendant's Motion to Dismiss is not supposed to be processed before a Plaintiffs' Motion for Summary Judgment.

103.    In 02-CV-1950, the magistrate closed the pleading to plaintiffs only (leaving it open to the defense) on 08-01-03, at defendants' request, and the court refused to docket plaintiffs' first motion for summary judgment.  However, in all of Evans' bills from July 2003 show a discussion of plaintiffs' summary judgment motions (which plaintiffs had conferred about).  Other defense bills itemize review of plaintiffs' summary judgment motions in August 2003.

104.    A response to a motion for summary judgment is required to discuss the stipulated and disputed facts.  In 02-CV-1950 Faegre turned in a pleading called Response to Summary Judgment, which did not include the facts stipulated or disputed.  They apparently counted on plaintiffs not knowing because they are pro se.

105.    As discussed in the 05-CV-01283 complaint, the 02-CV-1950 Report and Recommendation was fraudulent.  The facts as stated by the magistrate conflicted with Plaintiffs undisputed facts.  These are written without a notice of intention to take judicial notice.  When Plaintiffs disputed them the court refused to process their motions.

106.    Even a glance at the 02-CV-1950 docket shows that the litigation was dishonest.  Anyone can see that plaintiffs' motions were not processed.

107.    The 05-CV-01283 complaint discusses the invalid injunction and notes that, in the 10th Circuit, a special form for injunctions is required with the basis in law and statement of irreparable harm, but it was not filed.

108.    Thus, it was impossible for the lawyers defending 05-CV-01283 not to know that the 02-CV-1950 litigation was conducted fraudulently, that the injunction was

invalid and that it is illegal to jail a citizen to coerce them to withdraw from a civil lawsuit.

109.    White and Case and O'Brien, Butler and the ABA have an obligation, reinforced by the Code of Professional Conduct, to protest the jailing of Kay Sieverding and to seek for release

110.    White and Case and O'Brien, Butler and the ABA have done nothing to seek the release of Kay Sieverding even though they would have probable cause to believe that it is Obstruction of Justice and Wrongful Imprisonment, and that no one else is defending her. Furthermore, Sieverding repeatedly requested the help of the ABA and the 02-cv-1950 defense counsel and according to the Colorado Revised Statutes, appeal from contempt is not allowed, so Kay Sieverding has no easy way to free herself, but the ABA could secure her release through a simple motion.

111.    Jail is unpleasant, demeaning, and dangerous.

112.    The defendants seek to benefit from Sieverdings jailing because it interferes with her ability to use the law library and the Internet and her writing ability. Her filings are full of typos because they are typed by a service from a long distance tape recording.

113.    David Sieverding and the Sieverding children are adversely affected because they are deprived of Kay Sieverding's companionship and help.

114.    Dave Sieverding has been extremely stressed out by his wife's jailing, loss of her intimate companionship, and the stress of being personally threatened with jail.

115.    It is stressful for the Sieverding children not only lose their mother, but to also lose faith in the U.S. Government.

116.    Sieverding's health and life is at risk in jail because she is kept with former IV drug users some of whom have hepatitis. For instance, another inmate in plaintiff's pod who has Hepatitis recently bit a woman in a fistfight. There are many fights. Sieverding has been threatened.

117.    This action does not include claims for related litigation because the outcome of those actions is unclear.

118.    The defendants also have information that provide probable cause to believe that CIRSA, one organization paying 02-CV-1950 defense counsel Dave Brougham bills, is a RICO systematically engaging in bad faith insurance in violation of Colorado Law. (It systematically refuses to pay citizens claims under its public officials errors and omissions insurance). The Colorado legislature exempted CIRSA from regulation by the Colorado Insurance Commission, but this does not exempt CIRSA from having to follow Colorado insurance laws. It merely lets CIRSA get away with bad faith insurance. CIRSA claims to be audited by KPMG LLP, but the audit report is not signed by any specific individual auditors. The audit report doesn't disclose CEO compensation. The audit report does not disclose director names. CIRSA doesn't appear to file with the IRS. CIRSA claims to be tax exempt, but it does not appear to be registered with the Colorado Secretary of State as a corporation, partnership, charity, government or government agency.

119.    Supreme Court has ruled that judicial immunity does not extend to those in conspiracy with a judge.

120.    Colorado Revised Statutes have extensive information regarding the use of civil contempt. In CRS Volume 12, page 494 "in all cases of indirect contempt remedial

sanctions are sought, the sanctions and remedies that are imposed shall be described in

the motion", however the motions of the District of Colorado case 02-cv-1950 defense

counsel did not request jail. They changed them after the hearing was underway so that

the Sieverding's could be unfairly surprised. White and Case and O'Brien, Butler and the

ABA knew this because they received copies of all of the motions. In their motion the 02-

cv-1950 defense counsel implied that the Sieverding's had a duty or obligation to

withdraw the civil lawsuit, however "To justify punishment for civil contempt consisting

of the refusal to perform a required act for the benefit of others the trial court must upon

hearing make a finding… of the duty… to perform." Marshall v Marshall 191 Colo 165

551 p. 2d 789, 1976 Quoted in Colorado Revised Statutes Volume 12 page 500. There

was no such finding that Sieverding's had a duty to withdraw and there could be none.

Sieverdings have the right to sue to defend their reputation and their finances.

121.    In 02-cv-1950 the defense counsel asked for and received a sanction in

violation of State and Federal law.

122.    In the section on indirect contempt, Colorado Revised Statutes says "A

situation involving a possible indirect contempt requires, as a minimum, notice of charge,

the right to be represented by counsel, a hearing, and specific findings of the court"

Losavio v District Court 182 Colo 180, 512 p. 2d 266 1973

123.    "Due process is a sham when a judge is both prosecutor and judge in an

indirect contempt case" Harthun v District Court 178 Colo 118 495 p. 2d 539 1972, CRS

Volume 12 page 900

124.    Before the hearing Sieverding requested by motion a more definite

statement of the purpose and planned procedure so that they could prepare. That was

denied. They requested an impartial adjudicator. That was denied. At the hearing, they were not allowed to confront their accusers.

125.    The 02-cv-1950 defense counsel specifically advocated that Sieverding should not be able to have a lawyer for the contempt hearing and that it should be conducted with the same judge that defense counsel had already solicited the ex parte contact with, Judge Nottingham.

126.    There were no allegations that Sieverdings obstructed justice, however, the Colorado Revised Statutes says, "A court, before imposing penal sanctions for contempt should proceed with caution and deliberation, as the power should be exercised only when necessary to prevent obstruction or interference with the administration of justice." Lobb v Hodges 641 p. 2d 310 Colo App

127.    The sanctions requested by the 02-cv-1950 defense counsel, and ratified by the ABA, White and Case and O'Brien, Butler were criminally solicited and were not legal under Colorado Law.

128.    In all cases, minimum due process requires an opportunity to cross-examine one's accusers, but on 09-02-05, Sieverdings were not afforded this opportunity and all of the defendants in this case received transcripts and all of them know this.


**CLAIMS**:  Abuse of process, false imprisonment (under color of law), deprivation of companionship, violation of 42 U.S.C. § 1985 obstruction of justice (under color of law), violation of 42 U.S.C. § 1985 wrongful imprisonment (under color of law), violation of 42 U.S.C § 1983, violation of 42 U.S.C § 1982 (under color of law), violation of 42 U.S.C. § 1981 (under color of law), First Amendment Retaliation (under color of law),

22

violation of the Fourteenth Amendment (under color of law) as well as violation of 28

U.S.C. § 1654 (under color of law.

**PRAYER:**  On a joint and several basis $4 million for damages through 10-10-05 plus

$20,000 per day after for every day Sieverding is imprisoned after receipt of service.

Since 42 U.S.C. § 1985 is federal law, state tort law claim limits do not apply.

Dated this 29th day of October, 2005.

Verification: The plaintiffs hereby declare under penalty of perjury that to the best of

their knowledge and belief everything included in this document, and all other documents

filed with the Court, is true and correct.

Kay Sieverding

David Sieverding