## Untied States Court for the District of Columbia

SIEVERDING, et al,
                              *Plaintiffs,*

v.

Case No.:05-CV-02122
(RMU)

AMERICAN BAR ASSOCIATION, et al.,

                              *Defendants.*

**Objection to Motion to Dismiss, Motion for Summary Judgment in Sum Certain Amount, Motion for Failure to State a Legal Defense for Conspiracy to Deprive Rights and Unlawful Imprisonment, Motions for Sanctions Under Rule 11, and Motion for Oral Hearing.**

**Facts:** In their 11/21/05 filing and 11/23/05 filing, the defendants state that they accept as true all statements in plaintiff's pleading, thus no facts are in dispute.

Plaintiffs met the conspiracy pleading standard both to withstand a motion to dismiss and to secure summary judgment in the dollar amounts specified in the complaint.

Under rule 8(c), injury by fellow servant as pled by the defendants is an avoidance or affirmative defense. Therefore, the defendants have filed a reply.

In their 11/23/05 filing, the ABA and White and Case misrepresented the facts of related case District of Colorado 02-cv-1950 which they characterize as a property dispute. In 02-cv-1950, plaintiffs showed criminal extortion, criminal conversion of a road, aiding and abetting criminal conduct, conspiracy to damage reputation, defamation, malicious prosecution, abuse of process, First Amendment retaliation and so forth.

In their 11/23/05 filing, the ABA and White and Case misrepresented related and preceding litigation. Only in 02-cv-1950 and in related litigation before Judge Urbina

1

were any responsive pleadings filed. Before 02-cv-1950 plaintiffs filed and abandoned some pleadings. All of the pleadings that were dismissed after 02-cv-1950 were dismissed on the supposition that 28 U.S.C. § 1624 is optional and confers no rights to proceed without a lawyer and that an injunction can be issued without a motion requesting it as is required by Rule 7, without security as required by Rule 65(c), without a basis in law, without setting forth the reasons for its issuance, without a sworn statement of irreparable harm, without an evidentiary hearing, without a consideration of the plaintiffs' interests and compliance with Rule 65(d).

Magistrate Schlatter's Report and Recommendation is not based on an adjudicative process and, therefore, must be disregarded.

The legal issues and disputes seem to be the following: 1) is an overt act required for a finding of liability under civil conspiracy, unlawful imprisonment, malicious prosecution, abuse of process, extortion, or liability under 42 U.S.C. §§ 1981, 1983 and 1985? 2) do attorneys and bar association acting in conspiracy have civil or criminal immunity based on their profession? 3) does 42 U.S.C. § 1981 "All persons within the jurisdiction of the United States shall have the same right… to sue as is enjoyed by white citizens" confer specific rights related to civil litigation, such as the right to have the Federal Rules of Civil Procedure and Local Rules administered exactly as written and in accordance with explanatory Congressional notes, the right to rely on the rules of professional conduct as they have been adopted by the forum court, a right to rely on the representations of the U.S. Judiciary website, the right to proceed with any case that offers any evidence supporting any recognized cause of action if the amount of controversy and basis of jurisdiction are met (unless there is a statute conflicting with

every possible claim) a right that their motions will be considered and decided on the

record on the basis of the undisputed facts and law cited on the record, the right that their

summary judgment motions will be decided in accordance with Congress's stated

mandate to the judge, a right to hire any lawyer who is advertising for service and have

him or her perform the requested tasks to the best of their ability subject only to disclosed

conflicts, a right by the complaining party to have the state attorney regulation

organizations follow their written procedures and laws exactly as written, and, last but

not least, the right not to be jailed or subjected to force or intimidation for proceeding in a

civil lawsuit without a lawyer? 4) does or did a civil conspiracy exist to deprive David

Sieverding and Kay Sieverding of their civil rights in violation of 42 U.S.C. § 1983 and

to obstruct justice as defined in 42 U.S.C. § 1985? 5) does 42 U.S.C. §§ 1981, 1983 and

1985 apply to white people or classes of one?

Proceeding first with number 1, the plain language of 28 U.S.C. § 1343 clearly

confers liability to the defendants in this suit, thus making the claim of liability under 28

U.S.C. § 1985 a claim upon which relief may be granted, thus overcoming the

defendants' contention that the plaintiffs have "failed to state a claim upon which relief

may be granted";

"The district courts shall have original jurisdiction of any civil action authorized
by law to be commenced by any person: (1) To recover damages… by any act done in
furtherance of any conspiracy mentioned in section 1985 of Title 42; (2) To recover
damages from any person who fails to prevent or to aid in preventing any wrongs
mentioned in section 1985 of Title 42 which he had knowledge were about to occur and
power to prevent" 28 U.S.C. § 1343

The right to sue, with or without a lawyer, is secured by 28 U.S.C. § 1654.

Consequently, it is legal and the defendants did not have a Constitutional right to seek the

3

remedy of jail for exercising that right, nor did the judge have the right to invoke jailing as a remedy.

"No one has in the first instance a Constitutional right to a "remedy" against conduct of another person which is lawful" Senn v Pile Tile Layers Protective Union 301 US 468 81 L. Ed. 1229 57 Supreme Court 857 as quoted in American Jurisprudence V 16A Section 797

"Nothing is better settled than that a person may not be deprived of his liberty for the doing of an act which is not, and cannot be made, illegal." American Jurisprudence 2nd Volume 16A, Section 394

"The limitation inherent in the requirement of equal protection of the law extends to the judicial… so that a judgment may not be rendered in violation of such constitutional limitations and guarantee." American Jurisprudence Volume 16 Section 798

Later in this document, plaintiffs will further support their contention that 28 U.S.C. § 1985 provides the basis of a claim upon which relief may be granted even though they maintain that the plain language of 28 U.S.C. § 1343 provides this basis in and of itself and that no further citations are necessary.

In addition, the language of 28 U.S.C. § 1343 "commenced by any person" confers a fundamental right to litigate under section 1985 of Title 42 which could not be denied to the plaintiffs on the basis of the so-called injunction issued by Judge Nottingham, nor on the basis of the plaintiffs' race.

The defendants quote Judge Schlatter as saying "If not stopped, plaintiffs may soon be attempting to sue the lawyers who represent the lawyers who represent the lawyers, with no end in sight." Those cases involve different claims, different damages, and different time periods. This case is about using force to hinder presentment and damages there from.

4

Proceeding next with number 3, does 42 U.S.C. § 1981 convey substantial litigation rights: "All persons... right... to sue", the deprivation of which would be criminal under 18 U.S.C. §§ 241 and 242 or result in civil liability under 42 U.S.C. § 1981? The ABA argues that employment case law as it developed somehow obviates the plain language and Congressional intent of 42 U.S.C. § 1981 as it pertains to "All persons... right... to sue" saying that white people have, somehow, lost their right to sue. Plaintiffs think that the suspect class restrictions of employment case law pertain only to employment case law. The plain language of 42 U.S.C. § 1981, "All persons... shall have the same right... to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" obviously means that all people, regardless of race, have the litigation rights stated therein. That was the obvious intent of Congress when they passed the civil rights law after the Civil War. That interpretation is consistent with the Amendment 14 privileges and immunities clause, 18 U.S.C. § 241, 28 U.S.C. § 1624 and the use of "shall" in the Judicial Canons and the Federal Rules of Civil Procedure.

The fact that this conflict has explicitly arisen more than a century after the law was passed does not mean that it must not now be explicitly decided to the benefit of the public.

"It has been pointed out that a power is frequently yielded to merely because it is claimed, and that it may be exercised for a long period in violation of a Constitutional prohibition, without the mischief which the Constitution was designed to guard against appearing, or without anybody being sufficiently interested in the subject to... raise the question. Such circumstances cannot be allowed to sanction a clear infraction of the constitution. A corresponding application of these principles is found in the established rule that non-use will not defeat a power to exercise rights expressly delegated in a written constitution." American Jurisprudence 2nd, Volume 16, Section 124

5

Finally, plaintiffs contend that the trial court erred in dismissing their claim under 42
U.S.C. 1983 alleging deprivation of their rights to equal protection under the United
States Constitution. We conclude that the complaint does state a claim under § 1983 as to
an alleged violation of plaintiffs' rights to equal protection of the law.
[49]    A motion to dismiss for failure to state a claim is viewed with disfavor and should
be granted only if it is clear that plaintiffs would not be entitled to any relief under the
facts pleaded. National Surety Corp. v. Citizens State Bank, 41 Colo. App. 580, 593 P.2d
362 (1978), aff'd, 199 Colo. 497, 612 P.2d 70 (1980). In resolving a motion to dismiss, a
trial court must accept the allegations of the complaint as true and construe them strictly
against the defendant. Shapiro & Meinhold v. Zartman, 823 P.2d 120 (Colo. 1992).

"The equal protection guarantee of the United States Constitution requires like treatment
of persons who are similarly situated. Because equal protection is denied only when
government action has a 'special impact on less than all the persons subject to its
jurisdiction,' a threshold question is whether plaintiffs were treated differently than other
persons who are similarly situated. Bath v. Department of Revenue, 758 P.2d 1381 (Colo.
1988)... "Equal protection of the law requires, under a rational basis analysis, that "a
governmental classification which singles out a group of persons for disparate treatment
be rationally founded on differences that are real and not illusory and that such
classification be reasonably related to a legitimate state interest." Tassian v. People, 731
P.2d 672, 675 Colo. Supreme Court 1987

Consider the first question as to whether an overt act is required for liability for

conspiracy to deprive rights and unlawful imprisonment, malicious prosecution, abuse of

process and so forth. Before filing this complaint, plaintiff studied 158 pages on unlawful

imprisonment in American Jurisprudence from the jail library. They quoted that to the

ABA. (See 02-cv-1950 docket item 624, 10-26-05) Since this was more than twenty days

ago, plaintiffs think that they are entitled to sanctions because the defendants knowingly

took a legal position contrary to the established law of American Jurisprudence as

discussed in that brief:

"Persons other than those who actually effect an imprisonment may be so related
to the act or proceeding as instigators or participants therein as to be jointly liable, for all
who aid, direct, advise or encourage the wrongful detention of a person are liable for the
consequences" American Jurisprudence 2nd, Volume 32, Section 42

"All those who by direct act or indirect procurement personally participate in or
proximately cause false imprisonment or unlawful detention are liable thereto fore...
where several person unite in the wrongful act... each is equally liable jointly or severally

regardless of whether a conspiracy to do the act had theretofore been entered into. It is ordinarily for a jury to determine from the evidence, as a question of fact, the connection of any, of the defendants with the unlawful acts complained of" American Jurisprudence 2nd, Volume 32, Section 38

"A private person… is liable for false arrest or imprisonment unless he is justified under the principles of… legal process" American Jurisprudence 2nd, Volume 32, Section 40

"The action against the private parties accused of conspiring with the judge is not subject to dismissal. Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of 1983 actions. And the judge's immunity from damages liability for an official act that was allegedly the product of a corrupt conspiracy involving bribery of the judge does not change the character of his action or that of his co-conspirators. Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge. Nor has the doctrine of judicial immunity been considered historically as excusing a judge from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided." *United States Supreme Court DENNIS v. SPARKS, 449 U.S. 24 (1980)*

Furthermore, it is undisputable that the ABA and other defendants failed to take

any steps to have Sieverding released from jail. Under the general principles of

conspiracy an overt act is not required.

"In a Federal Court the specific intent required for the commission of conspiracy is the intent to advance or further the unlawful object of the conspiracy… silence which is designed to conceal may indicate an intention to conspire" American Jurisprudence 2nd, Volume 16, Section 3

"A criminal intent to participate in a conspiracy presupposes knowledge of the conspiracy… liability as a co conspirator is not dependent on knowledge of the entire scope of the conspiracy. Knowledge need not extend to all the details of the conspiracy." American Jurisprudence 2nd, Volume 16, Section 14

"At common law, a criminal conspiracy was completed when the agreement was made and an overt act was not a necessary incident of the crime." American Jurisprudence 2nd, Volume 16, Section 15

"A corporation may be prosecuted for participating in a criminal conspiracy. In computing the number necessary to constitute a crime of criminal conspiracy it has been held that a corporation may conspire with its officers and agents to accomplish an unlawful act so long as the criminal act is directly related to duties which the corporate

officer or agent had authority to perform, the corporation and its officer or agent may both be guilty of conspiracy." American Jurisprudence 2nd, Volume 16, Section 17

"A criminal conspiracy is a partnership in crime and that there is in each conspiracy a joint or mutual agency for the prosecution of the common plan, thus if two or more persons enter into a conspiracy, any act done by them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefore. This means that everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done or written by each of them. It makes no difference. As to the liability of a conspirator, that he was not physically present when the acts were committed by his fellow conspirators... and this joint responsibility extends not only to what is done by any of the conspirators pursuant to the original agreement, but also to collateral acts incident to and growing out of the original purpose... an original conspirator, who does not withdraw from the conspiracy before the termination, is liable as a conspirator during the whole period of its duration..." American Jurisprudence 2nd, Volume 16, Section 19

"One who joins a conspiracy after its formation is equally responsible with the original members and is responsible for all that has previously been done pursuant to the conspiracy... and ones who tacitly consents to the object of the conspiracy and goes along with the other conspirators, actually standing by while the other put the conspiracy into effect, is guilty even though he intends to take no active part in the crime." American Jurisprudence 2nd, Volume 16, Section 20

"A conspiracy to do something injurious to the reputation of the plaintiff may be the basis for a cause of action for damages. This is held to be the case, for example, where the plaintiff was subjected to an ostentatious and prolonged shadowing by detectives, thereby proclaiming to the public that plaintiff deserved surveillance." American Jurisprudence 2nd, Volume 16, Section 58

"Extortion, it is actionable to conspire to employ unlawful duress to extort money or to force a person to do what he is not obliged to do or to refrain from doing what he has a right to do." American Jurisprudence 2nd, Volume 16, Section 59

"The only proper plaintiff in a civil conspiracy is the person who suffered damages. Each one who caused the damages is a proper party defendant in the action. Under the principle of joint and several liability, all conspirators may generally be joined as parties defendant in the action, but the plaintiffs at his option may maintain suit against any one or more of them." American Jurisprudence 2nd, Volume 16, Section 66

Thus, an overt act is not required for the defendants' joint and several liability.

The last question is whether the defendants have immunity derived from their profession. The ABA cannot claim such immunity because it approves law schools who

8

base their tort classes on the D. Dobbs, Law of Remedies published by West Law. That

book specifically says:

"In some cases, however, attorneys violate no duty to the client but violate a duty owed directly to the nonclient. That is surely the case if the attorney negligently drives his car on the way to the courthouse and runs down a nonclient in the process. It is also the case when the attorney pursues the client's claim in a way that is forbidden by law." The Law of Torts by Dan Dobbs, Hornbook Series, West Group, 2000, page 1398

"We address first the threshold question whether, as the trial court found, Colorado law effectively immunizes an attorney from liability against a non-client's claim in the nature of restitution. We hold that it does not." Allied Financial Services, Inc. v. Easley, 676 F.2d 422 (10th Cir. 1982)

"As noted above, while fulfilling his or her fiduciary duty to act in the client's best interests, an attorney generally has no duty to the client's adversary and therefore is liable only for injuries caused by his or her fraudulent, malicious, or intentionally tortious conduct." Rohda v. Franklin Life Insurance Co., 689 F. Supp. 1034 (D. Colo. 1988)

Thus, if the imprisonment was unlawful because there was no basis in law for

Sieverding to be imprisoned and the defendants conspired for that purpose so as to

obstruct Sieverding's presentment in court, then the fact that they are lawyers does not

make them non-liable.

"A successful malicious prosecution plaintiff may recover in addition to general damages compensation for any arrest or imprisonment including damages for discomfort or injury to his health, for loss of time and deprivation of society" Roy Heck v James Humphrey et al 624 1994 United States Supreme Court

"[An attorney's] qualified immunity would not prevent a suit which alleged fraudulent behavior on the part of the attorney. Thus, there is a basis in law for making a claim of abuse of process and false imprisonment... the qualified immunity falls away, however, when an attorney acts in a malicious, fraudulent, or tortuous manner which frustrates or perverts the administration of justice... Abuse of process is a tort which consists of 1) a purpose other than that which the process was designed to accomplish and 2) the subsequent misuse of the process... false imprisonment has been defined as the "unlawful restraint by one person of the physical liberty of another"... One is subject to liability for false imprisonment if that person acts to cause a false arrest, i.e., an arrest made without legal authority... Since such fraud upon the court, if proven, would strip an attorney of his or her qualified immunity, there is a basis in law to proceed with such claims" Walter W. Stern V. Thompson & Coates Supreme Court of Wisconsin No. 92-

9

2279 1994.WI.15227 517 N.W.2d 658, 185 Wis. 2d 221, June 23, 1994... The first issue is whether a lawyer can be liable to a third party, non-client for acts committed within the attorney-client relationship where the attorney does not have direct contact with the third party. We conclude that an attorney can be held liable for actions rendered in the course of representation if those actions are fraudulent. Goerke v. Vojvodich, 67 Wis. 2d 102, 226 N.W.2d 211 (1975); Green Spring Farms v. Kersten, 136 Wis. 2d 304, 401 N.W.2d 816 (1987)... The second issue is whether a lawyer and a client are incapable, as a matter of law, of engaging in a conspiracy pursuant to Ford Motor Co. v. Lyons, 137 Wis. 2d 397, 405 N.W.2d 354 (Ct. App. 1987). We conclude that they are not... The third issue is whether Badger Cab permits a plaintiff to pursue an action against the defendant and the defendant's attorney where the plaintiff alleges that the defendant engaged in fraud and a conspiracy giving rise to the litigation. We hold that Badger Cab does not bar an action against the defendant's attorney under such circumstances... In Goerke, 67 Wis. 2d at 105, the Supreme Court set forth the general statement adhered to in Wisconsin regarding the liability of attorneys to third parties: While an attorney is not liable to a third person for acts performed in good faith, and mere negligence on the part of an attorney is insufficient to give a right of action to a third party injured thereby, an attorney is personally liable to a third party who sustains injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act... This standard was subsequently confirmed in Green Spring Farms, 136 Wis. 2d at 321-24. There the court observed, "Goerke explicitly stated that an exception to the general rule of attorney immunity from liability to nonclients exists when an attorney's conduct is fraudulent with respect to nonclients." Green Spring Farms, 136 Wis. 2d at 321-22... Niebler cites to no authority, nor are we aware of any, that requires direct contact between the third party and the attorney accused of fraud or collusion. Although the facts of Goerke and Green Spring Farms differ from the facts of this case, the general statement as to the liability of attorneys to third parties remains constant. Here, Lane alleges that Niebler acted "maliciously" and "[w]ith actual intent to ... defraud Lane" and that Niebler "exceeded the bounds of his professional obligation to Sharp and the Scarberrys and became an active participant in ... fraudulent activities, acting in bad faith out of self-interest and/or malice toward Lane." Under this standard, Lane's complaint sets forth facts sufficient to maintain an action as a third party, non-client against Niebler... 2. Attorney Ability to Conspire With a Client... Next, Niebler argues that the trial court properly dismissed Lane's civil conspiracy claim because it legally was impossible for Niebler and the Scarberrys, as attorney and client, to conspire together. We disagree... Civil conspiracy requires: "(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." Bruner v. Heritage Cos., 225 Wis. 2d 728, 736, 593 N.W.2d 814 (Ct. App. 1999) (citation omitted). To form a conspiracy there must be an agreement to violate or disregard the law, and the persons involved must knowingly be members of the conspiracy. Id. (citing Wis JI-Civil 2800)... Niebler is a legal entity distinct and separate from Sharp and the Scarberrys. And that status is not altered by the fact that Niebler was the attorney for the Sharp defendants. As such, Niebler and the Scarberrys were capable of engaging in a conspiracy... On a related matter, Niebler contends that although Lane alleges a conspiracy between Niebler and the Scarberrys, Lane "cannot specifically point to any wrongful acts performed by [Niebler and his law

firm] which would have injured him." In essence, Niebler contends that because it was the Scarberrys, not him, who actually took the allegedly unauthorized distribution, he could not be held liable for simply providing them with legal counsel. Niebler is wrong. A conspiracy is a combination of two or more persons acting together to accomplish an unlawful purpose or a lawful purpose by an unlawful means. Edwardson v. Am. Family Mut. Ins. Co., 223 Wis. 2d 754, 760, 589 N.W.2d 436 (Ct. App. 1998), review denied, 2001 WI 43, 242 Wis. 2d 544, 629 N.W.2d 784 (Wis. Mar. 6, 2000) (No. 99-2637). This law does not confer immunity to a conspirator because the conspirator did not receive a benefit from the wrongful act or because another conspirator may have played a more dominant or active role in the conspiracy. Here, Lane alleges that although the Scarberrys took steps to obtain the distribution, Niebler did much of the groundwork. Those allegations are sufficient to withstand Niebler's motion to dismiss… all stem from their alleged collective conduct seeking to defraud Lane of his claimed contractual rights. Juries routinely hear such claims involving multiple defendants in a single action… We conclude that where, as here, the attorney's alleged actionable conduct predates the litigation and is unrelated to the prosecution of the claim or the attorney's conduct during the litigation, Badger Cab does not bar a simultaneous prosecution of the claim against the client and the attorney in the same action… We conclude that Niebler may be held liable to Lane, a third party, non-client, for fraudulent acts committed within an attorney-client relationship. We also conclude that an attorney and the client are capable of engaging in a conspiracy. Finally, we conclude that Badger Cab does not preclude Lane from pursuing his claims against Sharp, the Scarberrys and Niebler in this single action. We therefore reverse the trial court's order dismissing without prejudice Lane's claims against Niebler. We remand to the trial court for further proceedings…" Lane v. Sharp Packaging Systems, Inc., 248 Wis.2d 380, 635 N.W.2d 896, 2001 WI App 250 (Wis.App. 09/26/2001) Wisconsin Court of Appeals No. 01-0708 248 Wis.2d 380, 635 N.W.2d 896, 2001 WI App 250, 2001.WI.0001059 September 26, 2001

Please note that since this action is brought under diversity and plaintiffs are Wisconsin citizens, Wisconsin law applies.

The plain language of the post-Civil-War civil rights laws and Fourteenth Amendment shows that they apply to all people. 42 U.S.C. § 1981(a) starts with the words "All persons". 42 U.S.C. § 1982 starts with the words "All citizens". 42 U.S.C. § 1983 starts with the words "Every person". The Fourteenth Amendment refers to: "any person". 42 U.S.C. § 1985(2) refers to, "any party".

"In a per curiam opinion, the Court held that Olech's allegations were sufficient to state a claim for relief under traditional equal protection analysis. "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly

11

situated and that there is no rational basis for the difference in treatment," stated the unanimous, unsigned opinion. Justice Stephen G. Breyer concurred." Oyez abstract of Village of Willowbrook v Olech 528 U.S. 562 (2000)

"Under (law) making it an offense for two or more persons to conspire to injury any person in the exercise of civil rights, race… is immaterial and the word "citizen" includes both negro and white" US v Ellis Western District of South Carolina 1942 43 Federal Supplement 321

Sieverdings' race is irrelevant to this complaint.

Under established conspiracy law as summarized by American Jurisprudence, the allegations of the complaint in this filing are adequate to prove that all of the defendants participated in the conspiracy to deprive both Sieverdings of their rights to appear in court by illegally jailing Mrs. Sieverding which damaged both husband and wife. As officers of the court, Patricia Larson, Frank Panopoulos, Carolyn Beth Lamm, Kevin Aloysius Kernan and Jerome C. Schaefer were obligated to protest the illegal incarceration and their employers are liable. They were specifically asked for help (See attached motion, docket item 635 from Colorado Federal Court case 02-cv-1950) and in their silence actively refused help.

The defendants acted or failed to act with knowledge of purpose of conspiracy and with view of protecting and aiding it.

"Section prohibiting conspiracy to injure, oppress, threaten or intimidate any citizen in free exercise or enjoyment of any right or privilege secured to him or her by Constitution or laws of the US extends to conspiracies with respect to rights and privileges protected by Fourteenth Amendment and conspiracies, otherwise in scope of this section, participated in by officials alone or in collaboration with private persons." US v Price Supreme Court

"Both physical and legal coercion were present. Even in the higher standard of criminal prosecution, conspiracy to deprive a person of rights secured to him by the Federal Constitution or laws, the crime is completed by the agreement and no overt act is necessary." Williams v US Court of Appeals 5th 1950 affirmed 71 Supreme Court 581 341 US 70 95L. ed 758

"Proof need only show that two or more persons conspired or agreed together to injure, intimidate, threaten or oppress a citizen... in the enjoyment of their rights and privileges under the Constitution or laws of the US and it is unnecessary to prove additional facts in the nature of overt acts." US v Ellis Western District of South Carolina 1942 43 Federal Supplement 321

"It is not necessary that indictments set out in detail evidence of conspiracy or describe it with same degree of particularity required in indictment for substantive offense nor is it necessary to cover any overt act." Wilkins v US California 5 ALA 1967 376F 2D 552 certiorari denied 1988 Supreme Court 342 389 US 964 19L ED 2D 379

"In an indictment for conspiracy it is not necessary to set out in detail the evidence of conspiracy or to describe it with the same degree of particularity as is required in indictment for the substantive offense." Crolich v US California 5 ALA 1952, 196 Federal 2D 879 certiorari denied 73 Supreme Court 36344 US 830 97L ED 646

"Right to testify at trial is one secured by the Constitution and accordingly, the conspiracy charged in the indictment is conspiring to violate the civil rights of certain individuals by preventing him from testifying at trial properly stated a federal crime." US v Thevis California 5 Georgia 1982 certiorari denied 103 Supreme Court 57 459 US 825 74L ED 2D 61 USCA 18 USC 242 page 785

"Private persons could be convicted of conspiring to deprive victim of civil rights on allegation of collaboration with police officers despite private person's incapacity to act under law... Defendants who were charged with conspiracy to deprive victim of civil rights on allegation that they collaborated with police officers could be convicted as persons conspiring willfully to cause commission of forbidden act despite acquittal of police officers." US v Lester CA 6 Kentucky 1966 363 F2D 68 certiorari denied 87 Supreme Court 705 385 US 938 17 L.Ed. 2D 813

"A private person who conspired with a deputy sheriff to cause arrest and imprisonment of inhabitants... for the purpose of extortion although incapable as a private citizen of violating the section forbidding the deprivation under color of law of rights secured to inhabitant of the United States by the Constitution Amendment Fourteen by such acts was guilty of conspiracy prohibited... since deputy sheriff was legally capable of committing the substantive offense... Under the section declaring that whoever under color of any law willfully subjects any inhabitant... to deprivation of any rights or immunities secured by US Constitutional Amendment Fourteen or laws of the United States shall be subjected to... right not to be deprived of liberty without due process and right not to be arrested by an officer acting arbitrarily without cause and for an ulterior purpose." Brown v US CA 6 Tennessee 1953 204 F2D 247

"An agreement between state law enforcement officers and others to extort money from inhabitants... by causing their arrest and imprisonment without justification by such officers and under color of state law constituted a "conspiracy" to commit an offense...

13

of which federal district court had jurisdiction." Culp v US CA 8 Arkansas 1942 131 F2D 93

"When proof of a conspiracy had been established, a relatively slight amount of evidence connecting the accused therewith is sufficient to sustain **conviction**… Where accused aided conspirators knowing, in a general way, their purpose to break the law, **jury** may infer that accused entered into an expressed or implied agreement with them." Luteran v US CC 8 Missouri 1937 93 F2D 395 certiorari denied 58 Supreme Court 642, 303 US 668 82 L.Ed. 1104

"With respect to this section government need not establish that there existed formal agreement to conspire, circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and totality of their conduct may serve as proof." US v Redwine CA 7 Indiana 1983 715 F2D 315 certiorari denied 104 Supreme Court 2661 467 US 1216 81 L.Ed. 2D 367

The following facts demonstrate the existence of a conspiracy that carried out several violations of 18 U.S.C. § 241 and 18 USC § 242 in furtherance of a plot to force David Sieverding and Kay Sieverding to withdraw from lawsuits and to illegally jail one or more of them if they do not withdraw in violation of 42 U.S.C. §§ 1981, 1983 and 1985.

On September 2, 2005, lawyers Christopher Beall and Tracy Van Pelt deprived David Sieverding and Kay Sieverding of rights secured by Colorado law in violation of 18 USC § 242 when they made an oral motion, which is not allowed under Colorado law. The content of their oral motions also deprived David Sieverding and Kay Sieverding of rights secured by Colorado law in violation of 18 USC § 242, which requires that, if jail is being contemplated, that it be disclosed in advance. The minute that the motion was granted, this established a conspiracy between Judge Nottingham, Christopher Beall and Tracy Van Pelt in violation of 18 USC § 241.

These surprise oral motion requests deprived David Sieverding and Kay Sieverding their right that such a motion have a basis in law. Christopher Beall gave a

fraudulent reason for requesting the incarceration and cited an irrelevant case US V. United Mine Workers that had no factual overlap with the situation in Colorado Federal Court Case 02-cv-1950. And because they were part of a conspiracy joined by the judge, they violated 18 U.S.C. § 241 as well.

Judge Nottingham immediately granted their oral request motions. Then Judge Nottingham gave Kay Sieverding the choice of immediately agreeing to "voluntarily" withdraw from her appeal or being jailed until such time that she does.

Kay Sieverding was not given a chance to cross-examine her accuser and she was not allowed to put on a full defense or complete her objection, further violations of 18 USC § 242.

Kay Sieverding felt that this was like being asked, "to sit at the back of the bus". She refused to withdraw and was arrested by US Marshals whose presence the judge had requested beforehand.

The fact that the Judge Nottingham summoned the US Marshals before the hearing commenced establishes that the Judge was a party in a Conspiracy Against Rights to deprive David Sieverding and Kay Sieverding of their right to notice as secured by Colorado law.

Then, Judge Nottingham gave David Sieverding the same choice. David Sieverding agreed to withdraw, so that at least one of them could be at home to raise their children and earn an income.

Later, Kay Sieverding filed a motion requesting to know when she would be released and the terms of her release, but this motion was denied in further violation of 18 USC § 242.

15

In their motion, Christopher Beall and Tracy Van Pelt cited a so-called injunction issued by Judge Nottingham that reads: "Plaintiffs are hereby enjoined and prohibited from commencing litigation in this or any other court based on the series of transactions described in this case, unless they are represented by counsel." (District of Colorado Federal Court case 02-cv-1950, Judge Edward W. Nottingham, 3/19/04.)

Edward W. Nottingham granted this sanction to parties still not identified, without a motion requesting it, without an accusation of wrongdoing, without citing a legal basis, with no witnesses, no statement of probable cause, no statements of disputed and stipulated facts, no evidence, no notice and no evidentiary hearing. The accused were never informed of the nature and cause of the accusation, even to this day. They were never confronted with the witnesses against them. They were never allowed to cross-examine the witnesses against them. They were denied a compulsory process for obtaining witnesses in their favor. They were denied the right to have the Assistance of Counsel for their defense. There were denied any defense whatsoever. They were denied basic due process. This deprived David Sieverding and Kay Sieverding, as well as their children, Tom and Ed, of rights secured by Amendments Five, Six and Fourteen as well as rights secured by the Federal Rules of Civil Procedure in violation of 18 U.S.C. § 242.

Judge Edward W. Nottingham cited Magistrate OE Schlatter's Report and Recommendation, in which Magistrate OE Schlatter said, "I RECOMMEND that they [David Sieverding and Kay Sieverding] be enjoined from filing any further lawsuits that relate to any of the series of events that occurred in Steamboat Springs, or that form the basis and backdrop for this case, unless plaintiffs are represented by counsel."

Magistrate OE Schlatter, however, makes it clear that this is his personal recommendation and not the conclusion of an adjudicative process. Thus, the recommendation was a successful solicitation to form a conspiracy against rights with Judge Edward W. Nottingham in joint violation of 18 U.S.C. §§ 241 and 242.

The defense counsel in 02-cv-1950 furthered the conspiracy both through their silence and by citing Magistrate OE Schlatter's Report and Recommendation in subsequent legal actions, including this one, in the hope that the judges in these later proceedings would see the call and join the conspiracy, which many did.

Federal Rules of Civil Procedures, Rule 7 requires that 1) "An application to the court for an order shall be by motion" and 2.) that this motion "state with particularity the grounds therefore" 3.) that this motion "shall set forth the relief or order sought" But, none of these requirements were met, thus depriving David Sieverding and Kay Sieverding or their rights secured by Rule 7 in violation of 18 U.S.C. 242.

This so-called injunction was issued in a manner that further deprived David Sieverding and Kay Sieverding of their rights secured by Rule 65 (a)(1) of the Federal Rules of Civil Procedure in violation of 18 U.S.C. 242. Rule 65(a)(1) says, "…No preliminary injunction shall be issued without notice to the adverse party." There was no notice to the adverse party because no party that was adverse to David Sieverding and Kay Sieverding filed any motion requesting these sanctions. The Magistrates Report and Recommendation does not constitute notice under Rule 65 (a)(1) because said notice would have to come from an adverse party, not the judge. The Federal Rules of Civil Procedure do not quality the judge as an "adverse party" for purposes of Rule 65.

17

This so-called injunction was issued in a manner that deprived David Sieverding and Kay Sicverding of their rights secured by Rule 65 (c) of the Federal Rules of Civil Procedure in violation of 18 U.S.C. 242. Rule 65(c) says, "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant…" Thus, no restraining order or preliminary injunction can issue without an applicant.

This so-called injunction was issued in a manner that deprived David Sieverding and Kay Sieverding of their rights secured by Rule 65 (d) of the Federal Rules of Civil Procedure in violation of 18 U.S.C. 242. Rule 65(d) says, "…Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained…" This order did not "set forth the reasons for its issuance", and did not "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained". It did, instead, reference other documents.

There is a specific form required for an injunction, but this so-called injunction does not comply with this form and thus deprives David Sieverding and Kay Sieverding of their right that any injunction issued against them comply with the required form. In fact, when the David Sieverding and Kay Sieverding sent the document to the Supreme Court, they wrote back asking where the order was.

The right to sue, with or without a lawyer is secured by the First Amendment, the Fourteenth Amendment and 28 U.S.C. § 1654. This so-called injunction ordered David Sieverding and Kay Sieverding not to exercise this constitutional right, thus making it a prima facie violation of 18 U.S.C. § 242.

18

When plaintiffs motioned for the basis for sanctions in Colorado Federal Court

Case 02-cv-1950, the defendants supplied no basis for sanctions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 11/05/05.

_Kay Sieverding_
Kay Sieverding

_Ed Sieverding_
Ed Sieverding

_Tom Sieverding_
Tom Sieverding

Certificate of Service

Service by Email and ECF

Jerome C. Schaefer, Esq.
OBRIEN, BUTLER, MCCONIHE & SHAEFER, PLLC
888 17th Street, N.W.
Washington, DC 20006-3939
jschaefer@obmslaw.com

Frank Panopoulos
WHITE & CASE LLP
601 13th Street, NW
Washington, DC 20005
(202) 626-3600
Fax: (202) 639-9355
fpanopoulos@whitecase.com

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

UNITED STATES Court District of Colorado.  NOV - 4 2005

Sieverding et al.                    02-CV-1950    GREGORY C. LANGHAM
                                     Judge Nottingham              CLERK
        v.
Colorado BAR Association et al.

Motion to compel defense counsel to protest
the continued jailing of Kay Sieverding as
they requested it solely to gain advantage
in related civil matters.

    Col. Rules of Prof. Conduct Rule 5.1 states
" A lawyer shall be responsible for another
lawyer's violation of the Rules of Professional
conduct if the lawyer orders or, with knowledge
of the specific conduct, ratifies the conduct
involves." ( C R Prof C. 5.1  C 1, CRS Vol. 12 P793)

    On  9-7-05, the ABA's counsel in the
District of Columbia in 05-CV-01283 filed:
"the ABA brings to the Court's attention that on
Friday, September 2, 2005 the Colorado District
Court held Plaintiff Kay Sieverding in civil
contempt for violating that court's injunction
against further pro se filings by Plaintiffs
related to this matter and refusing to withdraw
this and other actions filed after the Colorado
District Court judgment was issued. Ms Sieverding
was remanded to the custody of the U.S. Marshall
and remains incarcerated pending her voluntary
dismissal of the remaining actions" ABA's
motion to dismiss, 05-CV-01283 9/7/05  P. 2

①

Col. Rules of Prof Conduct Rule 4.5 a says: "nor shall a lawyer present or participate in presenting criminal, administrative or disciplinary charges solely to obtain an advantage in a civil matter" (C.R.S. Vol 12 P 791).

Col Rules of Prof. Cond. Rule 5.1.c. says "A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if... the lawyer knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." (C.R.S. Vol 12 P 793).

Sieverding has now been jailed for 66 days at a cost to taxpayers of $6,600. This has risked her life and health. For instance, on 10/30/05, a prisoner at another Colorado county jail was murdered by another inmate. Sieverding is in daily contact with an inmate carrying hepatitis who recently bit another woman in a physical altercation. Sieverdings' incarceration puts great physical and emotional stress on her husband, David Sieverding, who has a congenital heart condition, and on their children. David Sieverding is currently under great fear that Judge Nottingham will have him incarcerated for protesting his wife's incarceration.

The rules of the U.S. District Court of Colorado require all lawyers appearing before it to obey the Col Rules of Prof. Conduct. Therefore, the defense counsel are _required_ to take remedial actions to secure Sieverding's release from jail. As they know, under US Code 42 Sect 1981 all persons have the same right to sue as "white people" including

to sue for relief of judgment under Rule 60B(3) (F Rules of Civ. Proc.) USC 42 Sect 1985 defines obstruction of justice as using force or intimidation to influence or prevent testimony or presentment in any court. Investigation by the Attorney Regulation Counsel of Obstruction of Justice is _mandatory_ under Rule 251.9 when obstruction of justice is alleged.

Service by ECF to that list and by US mail to
~~Kay Sievering~~ 11-1-05

Kay Sievering   11-1-05
Clear Creek JAIL
PO B 518, 405 Argentine St
Georgetown Co 80444

Michael S. Greco
ABA President
Kirkpatrick & Lockhart Nicholson
C/o Berney Morrissey
75 State St. BOSTON MA 02109

ERIC Jondstadt
Faegre & Benson
90 S 7th St
Minneapolis MN 55402

Carolyn CASE / Frank Panopoulos
White + Case
701 13th St NW
Washington DC 20005

Peter Lyman
Hall and Evans
1125 17th St. Suite 600
Denver Co 80206

Ms. Siderius
McConnell Siderius; Houghtaling & Craigmile
400 S. Syracuse Suite 200
Denver CO 80237

John Gleason
Supr. Ct. of Col.
Attorney Reg. Counsel
600 17th St. Suite 200S
Denver Co 80202

Thomas Kelly
Faegre & Benson
3200 Wells FArgo Center
1700 Lincoln St
Denver Co 80203

Darryl DePriest
PATRICIA LARSON
ABA-Ass. Gen Counsel
541 N. FAIRBANKS Ct
Chicago Ill. 60605

R.D. EVANS
ABA
740 15th St NW
Washington DC
20005

John PALMERI
White & Steele
950 17th St 21st Fl
Denver CO 80202

Kevin Kernan / J. Schaefer
O'Brian Butler, McConkie
+ Schaefer
888 17th St NW
Washington DC
20006- 3339

Danielle Morise
Col. Att. General
1525 Sherman St
Denver Co 80203

3