UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KAY SIEVERDING, et al., )
)
Plaintiffs, ) Case No.: 05-CV-02122
) RMU
v. )
)
AMERICAN BAR ASSOCIATION, et al., )
)
Defendants. )

### BREIF TO PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs are sorry that some of these points were not included in their motion. It is extremely difficult to write these documents by telephone without benefit of email, fax or a law library.

1.) Plaintiffs wish to reemphasize that their complaint was brought under common law as well as under statute. Under common law, neither membership in a particular race nor an overt act is required to maintain an action for malicious prosecution, false arrest, or unlawful imprisonment. (See the complaint claims and the American Jurisprudence quotes in the motion. See, also, 2nd Restatement of Torts.) Furthermore, under Rules of Professional Conduct 5.1 C(1), Schaeffer, Papanonlous, Lamm, and Kennan are responsible.

2.) As undisputed the intent of the jailing was to force plaintiffs to give up their property rights to their 02-CV-1950/05-CV-01672 claims. As such the jailing

conspiracy was trespass to the chattels through violation of constitutional rights or attempted extortion. The damages sought in this action are directly related to the jailing and loss of companionship to David Sieverding.

3.) A complaint under section 198 5(3) must allege sufficient facts to show: that the defendants did (1) conspire … (2) for the purpose of depriving either directly <u>or indirectly</u>, any person … of the equal protection of the laws or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did or <u>caused to be done</u> any act in furtherance of the object of [the] conspiracy whereby another was (4a) injured in his person … or (4b) deprived of having and exercising any right or privilege of a citizen of the U.S." <u>Great American Federal Savings & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 372, 99 Supreme Court 2345, 2349 60 L. Ed. 957 (1979).

Thus the Supreme Court found no required racial element nor any requirement that the defendant must physically present on the scene. An act furthermore can be an act of omission. Plaintiff doesn't see anything that exempts action through the federal government.

Again in <u>United Brotherhood Carpenters & Joiners American v. Scott, et al.</u>, (7/5/83) the Supreme Court did not mention a racial motivation.

"The state action requirement itself prevents 1985 from being a general federal tort law. The additional requirement of class-based animus fashioned for private conspiracies is therefore inappropriate" <u>Brown v. Reardon, 770 F. 2d 896 (10th Cir. 8/19/85)</u>.

In that case, state has a small letter and is believed to mean "government" in a generic sense.

2

4.) The wrong signature form was inadvertently attached to the motion. David Sieverding is a party to this action. Ed and Tom Sieverding are not and may file a separate complaint related to their damages from the jailing such as interference with education.

5.) Plaintiffs believe that this action can be maintained under Section 1983 as well as under other reasons even though the illegal imprisonment was implemented by Federal Court because:

    a.) The District of Colorado was sitting partially in diversity and Traci Van Pelt and Christopher Beall were acting under diversity when they specifically requested the jailing.

    b.) Dave Brougham was an agent of both the State of Colorado and the City of Steamboat Springs when he encouraged the illegal jailing.

    c.) The illegal jailing was ratified by Colorado State employees including Daniel Moore, Matt Samuelson, John Gleason, James Garrecht, Kerry St. James and Paul McLimans.

    d.) The ABA is so involved with the U.S. Government and the State of Colorado that it is in some respects a state actor. The ABA authorized and advocated the Model Rules of Professional Conduct which specifically prohibit jailing to gain advantage in a civil lawsuit. Rule 4.4 "A lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person". Rule 3.1 "A lawyer shall not … assert an issue unless there is a basis for doing so". Rule 4.5 "A lawyer shall not participate in presenting criminal, administrative, or disciplinary charges solely to obtain an advantage in a

civil matter". Larson also violated Rule 8.3(a) and 8.3(b) the ABA is required to comply with its Model Rules of Professional Conduct because it publicly represents that it does and that the industry is self regulating through the Rules. In her silence, Larson violated Rule 8.4(f).

    e.)    O'Brien, Butler, McConihe and Schaeffer are paid and directed by the State of Colorado and local government actors including David Brougham, City of Steamboat Springs, Connell, Art Fiebring, Hays, Hall and Evans (a Colorado contractor), Hughes, Lettunich, McLimans, Schulenburg, St. James, Stettner, Strong, and Weber.

    f.)    The District of Colorado has explicitly adopted the Colorado Rules of Professional Conduct which are printed in Volume 12 of the Colorado Revised Statutes and are presented there as laws not advice or goals. The illegal jailing violates Rules 4.4 and 4.5. "A lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person ... nor shall a lawyer ... participate in presenting criminal, administrative or disciplinary charges solely to obtain an advantage in a civil matter. Using force or intimidation to hinder presentment in any court is a crime under U.S.C. Title 18 Sections 1512, 1513, 421, and 422. By her silence, Larson, the ABA's agent in 02-CV-1950, violated Rule 8.4 (f) "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law". Larson, by her silence, assisted Judge Nottingham in violating Canon 3(A)(5) "parties should not feel coerced into surrendering the right to have their controversy resolved by the courts" and in impairing the Sieverdings' statutory

4

rights under U.S.C. Title 28 Section 1654 "In all courts of the United States the parties may plead and conduct their own cases personally".

g.) The District of Colorado incorporated the laws of the State of Colorado regarding civil contempt. Thus state law was violated as well as federal law because these laws were violated.

Colorado Rules of Professional Conduct, Rule 107, Contempt Laws explicitly apply.

"In an indirect contempt proceeding ... the Person shall be advised of the right to have the action heard by another judge." In this case Sieverding had requested an impartial adjudicator before the hearing but her request was denied.

"At the first hearing, the person shall be advised of the right to be represented by an attorney" (107 5d). In this case Sieverding was advised she did not have a right to an attorney.

A possible indirect contempt hearing requires the right to call and confront witnesses and specific findings by the court (Lasavio v. Dist. Ct., 182 Colo. 180, 572 P. 2d 266).

"Due process is a sham when a judge is both prosecutor and judge in an indirect contempt case" Harthun v. D.C., 178 Colo. 405 P. 2d 536 (1972)

Sieverding was jailed for refusal to withdraw from litigation. However, under Colorado law that kind of civil contempt requires that the undone act be legally required. In this case there was no law requiring Sieverding to refrain from litigation.

Penal sanctions can only be imposed to prevent obstruction of justice, Lobb v. Hodges, 665 P. 2d 153 (Colo. App. 1982).

Under Colorado law if jail is to be a sanction for indirect contempt the accused must be told that at least 20 days before the hearing but Sieverding was not told and could not prepare properly.

Under Colorado Rule 107 it was required that "the person shall also be advised of the right to plead guilty or not guilty to the charges, the presumption of innocence, the right to require proof beyond a reasonable doubt, the right to present witnesses and evidence, the right to cross-examine, the right to subpoena, the right to remain silent, the right to testify, the right to appeal, and the right to make a statement in mitigation." All these rights were denied.

h.) At the action to take Sieverding into custody, Charles Turner, Director of the C.B.A., appeared and ratified the jailing as did his agent Brett Huff. The C.B.A. is so intertwined with the State of Colorado that it can be considered a state actor.

i.) The Colorado Attorney Regulation Counsel has specific statutory requirement to serve as a remedial backup for obstruction of justice such as using force and intimidation to stop presentment in court. Under C.R.C.P. 251.9 and 251.10 they are required to investigate <u>all</u> complaints of crimes by lawyers, rule violations and obstruction of justice. The procedure is regulated. It requires that the party complained about file a written response under penalty of perjury and that there be a written hearing which the complaining party may attend. It is not like a criminal prosecution where the prosecutor can elect to allow criminal

activity to continue. The C.R.S. gives the complaining party explicit rights to a mandatory investigation and written response. State employees Matt Samuelson and John Gleason refused Sieverding the rights explicitly conferred on her for redress by the C.R.S. Sieverding first complained to the Colorado Attorney Regulation Counsel three days after her jailing (see attached written refusal to investigate by Matt Samuelson). Thus state actors explicitly joined in the conspiracy to keep Sieverding in jail.

j.)     Sieverding writes this from jail where she has now been for more than three months. Her and her family's damages are a lot more than if she had been released after one week. Sieverding missed many good times and was physically, emotionally and financially stressed as was her husband. David Sieverding was forced to take time away from other pursuits to study law to try to get his wife out of jail. Sieverding's health has deteriorated – she previously took no prescription medicine but now takes three. Ed Sieverding's college has been, again, delayed. Tom Sieverding got off to a rough start in high school. If the Colorado Attorney Regulation Counsel had not participated in the conspiracy Sieverding would have been home two months ago.

For these reason, this action can be prosecuted under 1983.

6.)     The defendants assert that plaintiffs don't have full litigation rights because of their race. After mailing their motion Sieverding found this settled law in American Jurisprudence: "Equal protection of the laws of a state is extended to persons – within the meaning of the 14th Amendment to the Federal Constitution, when its courts are open to them on the same condition as to others in like circumstances, with like …

modes of procedure for the security of their persons and property, the prevention and redress of wrongs ... whatever may be his social and economic condition outside, when he enters the court, the law can permit no rule to fetter him in the prosecution of his claims or the preservation of his rights which does not apply equally to all others respecting the same kind of claims or rights .. By federal statute, all persons within the jurisdiction of the United States have the same right in every state ... to sue, be parties, and give evidence." *American Jurisprudence 2nd Vol. 16A § 791.*

This was copyright 1979 so it's not new. Plaintiff cannot lookup cases from jail but these cases seem relevant: <u>Steeps v. Hanson</u>, 274 Wis. 544, 80 N.W.2d 812; <u>Truax v. Comgan</u>, 257 US 312, 66 L. Ed. 254, 42 S, Ct. 124 ALR 375; <u>Southern Rail Co v. Greene</u>, 216 US 400 54 L. Ed. 536 30 S. Ct. 287; <u>Connolly v. Union Sewer Pipe Co.</u>, 184 US 540, 46 L. Ed. 679, 22 S. Ct. 431; <u>Tigner v. Texas</u>, 310 US 141, 84 L. Ed. 1124 60 S. Ct. 879, 130 L. Ed. 1422 60 S. Ct. 1092; <u>Cotting v Kansas City Stock Yards Co.</u>, 183 US 79 46 L. Ed. 92, 22 S. Ct. 30; <u>Bell's G.R. Co. v. Pennsylvania</u>, 134 US 232 33 L. Ed. 892, 10 S. Ct. 533, Re Garrabad, 84 Wis. 585 54 N.W. 1104.

Also, according to the 1979 American Jurisprudence the conditions under which Sieverding has been held for more than three months constitute cruel and unusual punishment because there is no fresh air, no exercise, no radio, no meaningful recreation, and the guards do not stop Sieverding from being subjected to oral threats. To the other inmates Sieverding apparently represents an oppressive upper class.

7.)   Another way to look at the illegal jailing and the continuation of the jailing is that Sieverding was and is entitled to the protection of the criminal laws to stop use of force to hinder presentment in court. The defendants had an affirmative obligation

8

under Rule 8 to report the crime to the proper authorities. But they refused – a conscious act of omission as part of a conspiracy to deny federal and state rights. In this they colluded with Samuelson and Gleason who were state actors.

8.) That law does not restrict remedy based on the plaintiffs race or the employer of the conspirators. Also, plaintiffs think that this extended jailing will result in the loss of their status as private parties which they would prefer and which is less expensive.

9.) Although plaintiff cannot do legal research while in jail, here are some additional relevant legal authorities from research she did in 2003:

   a.) "A cause of action for malicious prosecution is not limited to the situation where the defendant initiated the prior proceeding; it also arises in the situation where the present defendant continued the prior proceeding without probable cause ... and one can be held liable for malicious prosecution when 'takes some active part in the instigation or encouraging of the prosecution'" W. Page Keeton, Prosser and Keeton on Torts § 119 (5th Ed. 1984). **"Taking some active part includes advising or assisting another person to begin the proceeding and actively directing or aiding in the conduct of it."** (Emphasis added)

   **Although Poff may not have played any part in initiating Taylor's action, he participated in that action as Taylor's attorney and thus was certainly involved in its continuing prosecution. His representation of Taylor raises at least an inference that he actively assisted her and vigorously directed and aided the conduct of the prior case in a manner consistent with**

9

**his role as her advocate.** (Emphasis added) Thus we must reject Poff's argument that Hayes cannot meet the first element of a claim alleging malicious prosecution (that a prior judicial proceeding was initiated by the present defendant).

Poff v. Hayes No. 1980938 ALA 02/02/2000. Supreme Court of Alabama.

This case is directly relevant to White and Case's and O'Brien Butler's motion to dismiss plaintiffs' claim of malicious prosecution because like Poff they represented the parties initiating the malicious prosecution on 9/2/05 and also showed prior knowledge.

b.) "We hold that Robinson presented sufficient evidence upon which the jury could find that the defendants' conduct defiled the investigation, the grand jury proceedings and trial, and was so outrageous as to deny Robinson his constitutional right to a proper probable cause determination." Defendants' argument was specifically rejected by this court in Anthony v. Baker, 767 F. 2d 657, 663 (10th Cir. 1985). See also Jones v. City of Chicago, 856 F. 2d at 993-994. The district court did not error by instructing the jury that Robinson could recover for violation of his civil rights for false arrest or false imprisonment without probable cause." See Rex v. Teeples, 753 F. 2d 840, 842-42 (10th Cir. 1985) …

In order to recover damages under the Federal Civil Rights Act, plaintiff must prove to you by the greater weight of the evidence any or all of the following acts: 1) He was deprived of his right to be free from false arrest and to

be free from false imprisonment or 2) He was deprived of his right to be free from a malicious prosecution or 3) He was deprived of his right to liberty without due process of law or 4) He was deprived of his right to a fair trial or 5) He was deprived of these rights by a conspiracy." Robinson v. Maruffi, 895 F. 2d 649 (10th Cir. 1/19/90) 10th Circuit Court.

    c.)    "Lawful acts may become actionable as a civil conspiracy when the object is to ruin or damage the business of another ... assuming ... acts were lawful, that fact does not prevent the finding of a civil conspiracy." Clover v. Gynecology Clinic Inc., 120 S. Ct. 862, 528 U.S. 1099, 145 L. Ed. 2d 708 US 1/10/2000 United States Supreme Court.

    In this case the object of the conspiracy was to interfere with plaintiffs' litigation and Sieverdings suffered collateral damages as a result of the means used – jailing.

    d.)    "A conspiracy, for the purposes of a civil action, is a combination of two or more persons by some concerted action to accomplish any purpose by unlawful means or an unlawful purpose by any means" (Karges Furniture Co. v. Amalgated Woodworkers' Union, 165 Indiana).

    "It may be a verbal agreement or undertaking or a scheme evidenced by the action of the parties" Franklin Union v. People, 220 Illinois 355.

    "Any conspiracy the object of which is to wrongfully or maliciously injure another in business, trade, or reputation, is actionable ... in civil conspiracy damage is the gist and not the combination itself" Eddy on Combinations §§ 253, 371, 373.

"The evidence of conspiracy is generally, from the nature of the case, circumstantial. It is not necessary to prove that the defendants came together and actually agreed in terms. Greenl. Ev. (Redf. Ed.) § 93 8 Cyc. 685." Marrone v. Washington Jockey Club (3/10/13) Supreme Court of the United States.

 e.) "This court has recognized absolute immunity only in 'exceptional situations' where public policy makes it 'essential' Butz v. Economou, 438 U.S. 478, 507 (United States Supreme Court 1978). ... I cannot conceive ... how patent violations of individual rights can be tolerated in the name of the public good the very essence of civil liberty certainly consists in the right of every individual to claim the protections of the laws wherever he receives an injury" Justice Blackman dissenting Lahue, et al. United States Supreme Court.

"When a private party gives testimony in open court in a criminal trial" Lahue, et al. In this case, Beall was not an independent private party; he was paid to assist in limiting a potential $20 million liability. It was not a criminal trial, it was a civil trial. Beall was not a witness, he was not sworn, he was not testifying about what he knew, and Sieverdings were not allowed to cross examine him. Instead he was actively encouraging unlawful jailing and denial of due process in violation of the statutory contempt and injunction law.

 f.) "The Civil Rights Act of 1866 was the first federal statute to provide broad protection in the field of civil rights. Its primary purpose was to guarantee the newly emancipated Negro equality with Whites before the law" Lahue, et al.

12

Because the Supreme Court speaks of the "primary purpose" of the Civil Rights Act it is clear that there were also other purposes. The other purposes must clearly have been insuring the equality of all people before the law.

g.) "We must have assurance that those who would wield this (prosecutional) power will be guided solely by their sense of public responsibility for the attainment of justice. The prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance" Young v. U.S. ex Rel. Vuitton, 5/26/87 Supreme Court 1987. S. Ct. 42372, 481 U.S. 787, 2 U.S.P. Q. 2d BNA 1809, 107 S. Ct. 2124, 95 L. Ed. 2d 740, 55 U.S.L. W. 4676.

10.) Plaintiffs' claim can also be couched as First Amendment retaliation. "The test requires proof of the following elements: 1) that the plaintiff was engaged in constitutionally protected activity, 2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) that the defendant's adverse action was substantially motivated as a response to the plaintiffs exercise of constitutionally protected conduct." Worrell, 219 F. 3d Colorado.

11.) "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded" Harlow, 457 US at 819 quoted in Pierson v. Ray, 386 US 547, 554, 18 L. Ed. 2d 288 87 S. Ct. 1213 (1967)

Thus the defendants' claim of lawyer immunity could not be made in a motion to dismiss.

Verified under penalty of perjury all the facts in this and every other filing in this and every other court are true to the best of our knowledge.

Dated this __8__ day of __Dec__, 2005.

*Kay Sieverding*
Kay Sieverding
Clear Creek County Jail
PO Box 518
Georgetown, CO 80444

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KAY SIEVERDING, et al., )
)
        Plaintiffs, )   Case No.:   05-CV-02122
) RMU
v. )
)
AMERICAN BAR ASSOCIATION, et al., )
)
        Defendants. )

## INTERROGATORIES

1.) Did the ABA, Case and White or O'Brien Butler McConihe and Schaeffer advise the Colorado group not to have Sieverding put in jail?

2.) Did Case and White, and O'Brien Butler McConihe and Schaeffer advise their clients to take affirmative steps for release of Sieverding from jail?

3.) Why didn't the ABA take affirmative steps for release of Sieverding from jail?

4.) Why didn't the ABA protest the illegal jailing of Kay Sieverding?

5.) Why do the defendants ignore the common law about illegal imprisonment?

6.) Why did Patricia Larson, the ABA's representative in 02-CV-1950, ignore her obligations under the Rules of Professional Conduct fail to disclose to Judge Nottingham that there cannot legally be an injunction to refrain from a legal act as required by Rule 3.3.3 and Rule 3.1?

7.) Why did Patricia Larson, the ABA's representative, not represent to the Colorado court that under Rule 65 an injunction cannot be valid without notice, hearing, a basis in statute, a sworn statement of irreparable harm and a written order that complies with Rule 65 (d) as required by Rules of Professional Conduct Rule 3.3.3 and Rule 3.1?

8.) Did the defendants have direct or indirect ex parte contact with Judge Nottingham about the so-called injunction or the jailing?

9.) If so, what was said?

10.) Why didn't the ABA respond to plaintiffs' motion to the Supreme Court for a stay of the jailing and ask for Sieverding to be freed?

11.) Why does the ABA believe that attorneys who are advertising for service have a right to refuse service altogether to anyone they want for any reason they want?

12.) Why didn't Case and White and O'Brien Butler McConihe and Schaeffer resign from representation of the Colorado defendants when they found out about the plan to have Sieverding jailed as required by Rule 1.16 1-B?

Dated this 8 day of Dec, 2005.

*Kay Sieverding*
Kay Sieverding
Clear Creek County Jail
PO Box 518
Georgetown, CO 80444

2