1

Att. A — Attach to
Motion for
AFFIDAVITS or
LAW Supporting
Injunction

1      IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLORADO

2

Civil Action No. 02CV1950-EWN
3      KAY SIEVERDING, et al.,

4          Plaintiffs,

5      vs.

6      COLORADO BAR ASSOCIATION, et al.,

7          Defendants.

8                    REPORTER'S TRANSCRIPT
                        MOTION HEARING
9

10          Proceedings before the HONORABLE EDWARD W.
       NOTTINGHAM, Judge, United States District Court for the
11     District of Colorado, commencing at 2:51 p.m., on the 2nd day
       of September, 2005, in Courtroom A1001, United States
12     Courthouse, Denver, Colorado.

13                        APPEARANCES

14     For the Plaintiffs          KAY SIEVERDING, PRO SE
                                   DAVID SIEVERDING, PRO SE
15
       For the Defendants          CHRISTOPHER P. BEALL, ESQ.
16                                 Faegre & Benson
                                   370 17th Street
17                                 Denver, Colorado
                                   TRACI VAN PELT, ESQ.
18                                 McConnell Siderius Fleischner
                                   2401 15th Street
19                                 Denver, Colorado
                                   DAVID BROUGHAM, ESQ.
20                                 Hall & Evans
                                   1125 17th Street
21                                 Denver, Colorado
                                   BRETT HUFF, ESQ.
22                                 White & Steele
                                   950 17th Street
23                                 Denver, Colorado

24              THERESE LINDBLOM, Official Reporter
          901 19th Street, Denver, Colorado 80294
25       Proceedings Reported by Mechanical Stenography
           Transcription Produced via Computer

1                    P R O C E E D I N G S

2          THE COURT:  Case 02CV1950, Sieverding v. Colorado Bar

3   Association and others.

4          I'll take the appearances, starting with the

5   plaintiffs.

6          MR. SIEVERDING:  I'm David Sieverding.

7          MS. SIEVERDING:  Kay Sieverding.

8          THE COURT:  Just so you'll be aware, it's the custom

9   in this court to rise when you address the Court, and you need

10  to do that.  I understand that you may not have known the

11  custom.

12          MR. BEALL:  Christopher Beall, Faegre & Benson, on

13  behalf of the newspaper defendants, Steamboat Pilot and Today.

14          THE COURT:  Mr. and Mrs. Sieverding, you can be

15  seated.  You just have to do it when you're addressing the

16  Court.

17          MS. VAN PELT:  Traci Van Pelt.  I represent Rich

18  Tremaine, Sandy Klauzer, James Horner and Jane Bennett.

19          MR. BROUGHAM:  Your Honor, David Brougham.  I can't

20  remember all the people that I represent because there are too

21  many.  I represent myself, I represent the majority of the

22  public officials in Steamboat Springs, Colorado, I represent

23  the law firm Hall & Evans, I represent the City of Steamboat

24  Springs, a lot of collective Steamboat Springs.

25          MR. HUFF:  Good afternoon, Your Honor.  Brett Huff

1 from White & Steele.  I represent the Colorado Bar Association.

2 And Charles Turner of the Colorado Bar Association is here as

3 well, Your Honor.

4    *THE COURT:*  Where is Mr. Turner?  I didn't see him.

5    Oh, there he is.

6    This matter is before the Court on the motion for an

7 order citing the plaintiffs for contempt filed on behalf of the

8 new -- I'll call them the newspaper defendants, the motion for

9 a similar order to show cause filed on behalf of all of the

10 defendants Mr. Brougham represents, and the motion for joinder

11 filed by the Colorado Bar Association.

12    Now, Mr. Beall, I understand that you're taking the

13 lead on this one, so to speak?

14    *MR. BEALL:*  Yes, Your Honor, I am.

15    *THE COURT:*  All right.  You may proceed.

16    *MR. BEALL:*  Thank you.

17    Your Honor, before the Court is the motion for an

18 entry of an order to show cause why the Sieverdings, the named

19 plaintiffs, Kay and David Sieverding, should not be held in

20 contempt of court.

21    There has been, as is the case in this case,

22 voluminous filings.  I think it might help if I could itemize

23 the documents that relate to this motion, and hopefully I will

24 be able to do that quickly.

25    *THE COURT:*  Sure.

1        MR. BEALL:  Obviously, the first document is the most

2   important.  It's your order of March 19, 2004.  That's the

3   order dismissing the case and also imposing the limitation on

4   pro se filings, that is the subject of the motion today.

5        THE COURT:  And just so we're all on the same page, so

6   to speak, the magistrate's specific recommendation that was

7   adopted by this court is that the plaintiffs be enjoined from

8   filing any further lawsuits that relate to any of the series of

9   events that occurred in Steamboat Springs or that form the

10   basis and backdrop for this case unless plaintiffs are

11   represented by counsel.  And that was affirmed by this court.

12   And on appeal, the Court of Appeals noted that that prohibition

13   was not in issue.

14        MR. BEALL:  That's correct.

15        THE COURT:  Accurate?

16        MR. BEALL:  Accurate, Your Honor.

17        THE COURT:  All right.

18        MR. BEALL:  The Court of Appeals also indicated that

19   it would enforce that limitation on pro se litigation, the

20   specific language Your Honor read from the magistrate's

21   recommendation.  In Your Honor's order that became the judgment

22   that was appealed, at page 3 of your order, you stated:

23   Plaintiffs are hereby enjoined and prohibited from commencing

24   litigation in this or any other court based on the series of

25   transactions described in this case unless they are represented

1  by counsel.

2          That is the order that my clients believe has been

3  violated, and that is the subject of the motion for order to

4  show cause.  Motion for order to show cause was filed October

5  27, 2004.

6          Plaintiffs filed what was captioned as an objection to

7  that motion.  We received it on November 1, '04.

8          On November 22, '04, the newspaper defendants filed a

9  supplemental memo in support for order to show cause, apprising

10  the Court of recent -- then recent developments in the

11  Minnesota case.

12          The plaintiffs filed a response to that supplemental

13  memo on November 29, at least we received it November 29.   Then

14  there were a series of supplements to these motions.

15          The newspaper defendants filed a second supplemental

16  memo on June 27, '05.

17          Mr. Brougham's firm on behalf of his clients filed a

18  motion for order to show cause on June 29.

19          The Colorado Bar Association filed a motion for

20  joinder in both motions on June 30, as did Ms. Van Pelt's

21  clients on June 30 also.

22          There was a third supplemental memo filed by the

23  newspaper defendants on July 1.  There was a -- '05.

24          There was a request for expedited ruling filed by

25  Mr. Brougham on behalf of his defendants -- his clients on

1   July 6, '05.

2          Your Honor on July 8, '05 set this matter for hearing.

3          On August 22, Mr. Brougham on behalf of his clients

4   filed a supplement apprising the Court of more developments.

5          And, Your Honor, my -- I filed on August 30 a fourth

6   supplemental memo, again apprising the Court of new

7   developments.

8          The basis for all of the parties' motions, but I

9   should only speak for my clients, are the filings by Mr. and

10  Mrs. Sieverding in a number of venues.  And I'd like to rattle

11  them off for you.

12         *THE COURT:*  Why don't you, if you would.  I think it

13  would be helpful if you would not only rattle them off, tell me

14  what the status is today.  I notice we've got some magistrate

15  recommendations for dismissal.

16         *MR. BEALL:*  I'm prepared -- actually, I should be able

17  to give you procedural history on all of the cases.

18         *THE COURT:*  All right.

19         *MR. BEALL:*  The first case is the Minnesota --

20  District of Minnesota case filed by Mr. and Mrs. Sieverding on

21  October 4, 2004 against the newspaper defendants and my law

22  firm, Faegre & Benson.

23         That case, a magistrate recommended dismissal.  And

24  District Judge Tunheim adopted the recommendation and dismissed

25  the case on May 25.

1    Mr. and Mrs. Sieverding filed a Notice of Appeal in

2    the Eighth Circuit.  The Eighth Circuit by order issued

3    August 8, 2005 dismissed the appeal as frivolous.

4    The Sieverdings have requested an extension of time

5    for a petition for rehearing, but I believe that amount of time

6    has not yet passed.

7    Mr. and Mrs. Sieverding in the District of Minnesota

8    on July 3, 2005 filed a second Minnesota case, this one against

9    CIRSA, Colorado Intergovernmental Risk Sharing Association.

10    That case magistrate recommended dismissal, and the district

11    judge hearing that case adopted the magistrate's recommendation

12    and on July 7, 2005, dismissed the case.

13    *THE COURT:*  On July 7?

14    *MR. BEALL:*  2005, Your Honor.

15    I am unaware, mainly because I failed to check Pacer,

16    what the status of any appeal in that case is.

17    On June 23, 2005, in the Northern District -- in the

18    District of Northern Illinois, Mr. and Mrs. Sieverding filed a

19    new case against all of the defendants in the Colorado action,

20    as well as some of their law firms --

21    *THE COURT:*  Give me the date of the Northern District

22    case.

23    *MR. BEALL:*  Filed June 23.

24    Do you have the copies of the dismissal?

25    *MR. BROUGHAM:*  I do not.  I don't have it with me.

1    I'm sorry -- yes, I do.

2    MR. BEALL:  On July 22, 2005, pursuant to screening

3  review that is the practice in the District of Northern

4  Illinois, the Court dismissed the Northern Illinois case.  We

5  are unaware of that ruling and have copies of the Pacer docket

6  entry that shows the ruling of the judge.

7    If I may approach.

8    THE COURT:  Yes.

9    MR. BEALL:  That ruling, as I said, was entered

10  July 22.  Pacer shows that Mr. and Mrs. Sieverding have filed a

11  Notice of Appeal of that ruling.  That Notice of Appeal was

12  filed August 22, 2005.

13    THE COURT:  Pause and give me a moment to review this

14  ruling of the Northern District of Illinois.

15    MR. BEALL:  Sure.

16    THE COURT:  Proceed.

17    MR. BEALL:  Thank you, Your Honor.

18    The Sieverdings filed in the District of Columbia on

19  June 27, 2005 a Complaint, again naming all of the defendants

20  in this case, as well as some of their law firms, including my

21  own.  The defendants have been served --

22    THE COURT:  I'm sorry, sir.  Give me the date of that

23  again.

24    MR. BEALL:  Sure, June 27, 2005.

25    The defendants have been served, or at least those

1    entities that exist.  There are several entities that have been

2    named, like the U.S. Judiciary, I'm not sure if they've been

3    served, Your Honor.

4        The -- the served defendants moved for an extension of

5    time to respond to the Complaint pending the outcome of these

6    proceedings in this court.  The Court in the District of

7    Columbia entered an order granting that motion, extending the

8    deadline for the defendants to respond, at least the defendants

9    who were behind that motion, to respond by September 7, 2005.

10       So the defendants, all the defendants represented at

11   the counsel table, are facing a September 7, 2005 deadline to

12   respond.

13       There has been a second District of Columbia case

14   again filed by Mr. and Mrs. Sieverding, filed August 22, 2005,

15   again naming all the defendants in this case, as well as some

16   of their law firms.

17       And then finally, Your Honor, there is a case filed in

18   state courts of Colorado, in the Denver City and County,

19   against the State of Colorado, again, by Mr. and Mrs.

20   Sieverding.  I believe it was filed last month, but I don't

21   have the precise date on the filing of the state court case.

22       All of these cases, Your Honor, violate your order.

23   They all pertain to the series of transactions described in the

24   case, which is the language in your order.  They also fall

25   within the scope of the magistrate's recommended injunction, in



1    that they involve events that are described in the pleadings of

2    the Colorado case.

3         Mr. and Mrs. Sieverding appear to be bent on filing

4    lawsuits wherever they wish to against these defendants in an

5    effort to harass them.

6         THE COURT:  What allegations are made about venue and

7    personal jurisdiction in these various lawsuits, Minnesota and

8    Illinois and District of Columbia?

9         MR. BEALL:  In the Minnesota case against the

10   newspaper defendants, Your Honor, there were allegations made

11   with respect to venue that it was improper -- that the

12   plaintiffs could not obtain an unbiased forum in Colorado.  And

13   that as the plaintiffs reside in Wisconsin, that the Minnesota

14   forum was appropriate, especially in light of the fact that the

15   newspaper's lawyers have an office in Minnesota.

16        With respect to the Illinois case, there were no

17   allegations of either venue or jurisdiction, personal

18   jurisdiction.

19        Your Honor, there also are insufficient allegations of

20   venue and jurisdiction in the two D.C. cases.  And we will, if

21   forced to respond, be moving on the grounds that there is no

22   personal jurisdiction or subject matter jurisdiction or proper

23   venue in the District of Columbia, in addition to the

24   violations of Rule 8, as well as Your Honor's order.

25        THE COURT:  What relief do you seek from this court?



1          MR. BEALL:  At least initially, we seek an order

2    requiring the plaintiffs, Mr. and Mrs. Sieverding, to show

3    cause why they should not be held in contempt, but that's

4    procedural.

5          THE COURT:  That's why we're here today.

6          MR. BEALL:  That's why we're here.  Your Honor, we

7    need -- pursuant to our right to be compensated for the

8    defendants' damages as a result of the violation of your order,

9    our clients are entitled to be compensated for the attorneys'

10   fees that have been spent, both on this motion and on the costs

11   associated with defending the frivolous litigation in

12   Minnesota, in Illinois, in District of Columbia, as well as

13   continuing proceedings here.

14         THE COURT:  Well --

15         MR. BEALL:  And --

16         THE COURT:  Go ahead.

17         MR. BEALL:  If I can just complete.  In addition, the

18   remedy that is clear the defendants need is protection from

19   this -- these plaintiffs.  These plaintiffs appear not to be

20   capable of complying with the law or the rules.  And as a

21   result, we believe -- at least the newspaper defendants believe

22   that Your Honor needs to impose more stringent restrictions,

23   perhaps prohibiting them from filing anything in their pro se

24   capacity, certainly prohibiting them from filing anything until

25   they have satisfied the outstanding attorneys' fees judgment

1    already imposed against them, as well as the attorneys' fees

2    that ought to be imposed as a result of their contemptuous

3    conduct.

4        THE COURT:  Well, what you just said raises the

5    question that I would -- I was going to raise when I

6    interrupted you.

7        If I impose additional sanctions in the form of

8    attorney fees that have been incurred in all of these various

9    lawsuits, how will that be effective?  Because I'm assuming

10   they have not paid the sanctions that were imposed in this case

11   and affirmed by the Tenth Circuit.

12       MR. BEALL:  That is correct.

13       THE COURT:  Is that accurate?

14       MR. BEALL:  They have not --

15       THE COURT:  Have they paid any attorneys' fees?

16       MR. BEALL:  No, Your Honor.

17       THE COURT:  So I can tell them they're going to pay

18   attorneys' fees until I'm blue in the face, and nothing is

19   going to happen.  I -- I fail to see how that's an effective

20   sanction.

21       MR. BEALL:  It's not intended to be a sanction that

22   affects their future conduct; but rather, compensates the

23   defendants for the contemptuous conduct in the past.  The

24   sanction, at least initially, that may affect their conduct is

25   the imposition of a penalty until such time as they withdraw

1   all of their frivolous lawsuits and they satisfy the judgments.

2          Your Honor has it within your power to impose a

3   per-day fine, to be payable to the Court, for as long as the

4   contumacious conduct and contumacious position remain in place.

5   At such time as the Court determines that the financial penalty

6   is insufficient to affect the conduct and to obtain compliance,

7   Your Honor then has the power to find the sanction insufficient

8   and to incarcerate.

9          *THE COURT:*  Well, that brings me to the point.

10          I thought -- I was asking -- I was inquiring whether

11   you want that --

12          I thought I asked the marshal to be here, federal

13   marshal.  Do we not have a marshal?

14          *COURTROOM DEPUTY:*  I'll call, Your Honor.

15          *THE COURT:*  Okay.

16          *MR. BEALL:*  If I may, I'd just like to make sure that

17   the record is clear with respect to some points of law.

18          And first, the point is that this is a civil contempt

19   proceeding.  Regardless of any possibility of incarceration,

20   Mr. and Mrs. Sieverding hold the keys to their cell.  They may

21   comply with the Court's order, at least prospectively, and they

22   may avoid incarceration.

23          As a result, this is civil, not criminal contempt.

24   They do not have the right to counsel.  They do not have the

25   right to a jury trial.  They do not have the right to a full

1    and complete evidentiary hearing.  Rather, this is a civil

2    contempt proceeding, summary in form.  And all that is required

3    under the Fifth Amendment is notice and an opportunity to be

4    heard.

5            The citations in support of those propositions are

6    legion, but I'll give you two.  *United States v. United Mine*

7    *Workers of America* --

8            THE COURT:  I'm satisfied on both of those points.

9            MR. BEALL:  Okay.

10           In order to find contempt, Your Honor, it is the

11   movant's burden to show by clear and convincing evidence on the

12   liability side that a valid court order existed, that the

13   defendant had knowledge of the order, and the defendant

14   disobeyed the order.

15           We believe that there can be no dispute that the

16   plaintiffs in this case, Mr. and Mrs. Sieverding, had knowledge

17   of the order -- number one, there is no dispute that the order

18   is valid.  It has been affirmed by the Tenth Circuit.  The time

19   for a cert petition has passed.  It is a valid order.

20           Defendants have knowledge of that order, because they

21   appealed it.  Clearly, the record demonstrates their knowledge

22   of the order.

23           With respect to the final element, did the defendants

24   disobey the order?  This comes down to the question, do the

25   complaints in Minnesota, Chicago and District of Columbia, do

1    they -- are they based on the series of transactions described

2    in this case?  All of those complaints, Your Honor, quote

3    verbatim extensively from the complaints in this case.  They

4    refer to the proceedings in this case.  Moreover, the factual

5    allegations all relate to the underlying proceedings in

6    Steamboat Springs, the neighborhood dispute between the

7    Sieverdings and the Bennetts that is the -- the star of this

8    dispute.

9         I don't think that there is any -- there can be any

10   contention that these cases in Minnesota, Chicago, and D.C. all

11   relate, all are based on the same series of transactions.  But

12   I don't and you don't need to rely on my say so.

13        Now the District of Columbia -- excuse me, Northern

14   District of Illinois has held that the complaint in Illinois

15   was based on the same series of transactions.  And the Court in

16   Minnesota has held the same, in two different cases.

17        Not yet has it been found that the D.C. complaints are

18   based on the same series of transactions.  However, because the

19   pleadings in the D.C. case almost mirror the Chicago case, I

20   think it's a foregone conclusion that the Court there will

21   conclude.

22        I don't think there can be really any valid argument

23   that all of these complaints are not based on the same series

24   of transactions.  And as a result, we believe there has been a

25   violation of the Court's limitation on pro se litigation,

1    because as is clear, the Sieverdings have been filing these

2    cases without assistance or representation by counsel.

3            And as a result, we believe we have met the elements

4    for showing contempt.  And that the question now is for the

5    plaintiffs to show that they have discharged their contempt.

6            *THE COURT:*  And discharging the contempt would be for

7    them to dismiss all of these lawsuits?

8            *MR. BEALL:*  Yes, sir, and bring themselves to

9    current -- current with the outstanding attorneys' fees

10   judgment, although that isn't truly a contempt of the order,

11   but it is a remedy that Your Honor can impose.

12           *THE COURT:*  Right.  Now, they haven't paid the

13   sanctions that -- that have already been imposed.  The

14   sanctions you're asking for have not been imposed yet.

15           *MR. BEALL:*  That's correct.

16           *THE COURT:*  And we don't know the monetary amount of

17   those sanctions as of this moment, do we?  Have you somewhere

18   in your filings --

19           *MR. BEALL:*  No, Your Honor, we have not submitted the

20   evidence.  I'm prepared to submit an affidavit with respect to

21   our current bills, if Your Honor needs -- wants to go to a

22   remedy phase now.

23           *THE COURT:*  Well, those -- that doesn't need to be

24   done now.

25           *MR. BEALL:*  No, it doesn't.

```
 1          THE COURT:  But the prospective remedy, we can deal
 2   with.
 3          MR. BEALL:  Right.  At least with respect to the --
 4   that's the fees going forward.  The prior order of attorneys'
 5   fees is $111,864.82.
 6          THE COURT:  For your firm, or everybody?
 7          MR. BEALL:  Everybody combined.
 8          THE COURT:  Okay.
 9          All right.  Does anybody else on the defense side want
10   to be heard?
11          MS. VAN PELT:  Your Honor, if I may very briefly.
12          THE COURT:  All right.
13          MS. VAN PELT:  I represent --
14          THE COURT:  Give me your name again.  I'm sorry.
15          MS. VAN PELT:  Traci Van Pelt.  I represent Jane
16   Bennett and the lawyers that represented Jane Bennett in the
17   initial temporary restraining order.
18          To put a human face on this, Jane Bennett has been
19   involved with Kay Sieverding for over 14 years in this dispute.
20   The neighborhood dispute started about 14 years ago.  She's
21   been involved in eight years of litigation with Mr. and Mrs.
22   Sieverding.  Nothing stops them, no court order, no monetary
23   sanction.  You need to make them stop.
24          I submit to you that their repeated filings that
25   contain outrageous allegations against Mrs. Bennett and her
```

1  family are nothing more than an attempt around the proper

2  restraining order that was entered eight years ago.

3          So this court understands that every complaint that

4  the Bennetts are served with is nothing more than an attempt

5  around the original restraining order.

6          THE COURT:  Now, are they being served in these

7  Minnesota and Washington, D.C. things?

8          MS. VAN PELT:  Yes, they are.

9          THE COURT:  So have you actually defended them and,

10 therefore, they have incurred attorneys' fees in defending

11 these things?

12         MS. VAN PELT:  Yes, they have.  My firm was also sued

13 in the District of Columbia case, and so we're representing --

14 I'm representing my firm in that case, as well as the Bennetts,

15 as well as my lawyer defendants who have incurred -- we're well

16 into hundreds of thousands of dollars of fees, combined

17 collectively for all the defendants.  And we're into double

18 digit complaints.

19         One of the basis for the dismissal of this case was

20 two prior lawsuits filed in Wisconsin by the Sieverdings, under

21 Rule 41, Your Honor.  This case was dismissed under that rule.

22 So we're in double digit complaints.  The Sieverdings won't

23 stop.  And I -- I suggest that nothing short of incarceration

24 will make them stop, and that's an appropriate sanction in this

25 case.

1      *THE COURT:*  All right.

2          Mr. Brougham, do you wish to add anything?

3          *MR. BROUGHAM:*  Don't I usually?

4          *THE COURT:*  Yes.

5          *MR. BROUGHAM:*  Certainly, Your Honor, I concur with

6   what has been said before.  But one of my major clients, the

7   former president of the Steamboat Springs City Council, has

8   traveled here today, having suffered through what he

9   characterizes of 14 years of what you just heard about with his

10  wife, Mrs. Bennett.  And either -- well, in my view, and the

11  Court seeing me for 30 years doing what I do, I have never seen

12  such a flagrant abuse of the judicial system.  And I would say

13  that about the lawsuit filed in this District Court that you

14  dismissed alone, without regard to what has been added.

15          But my clients -- and one of my clients is here today,

16  having traveled three hours to listen to this -- is hoping a

17  judge takes the bull by the horns and does something about the

18  Sieverdings' complete disdain for the rule of law, the judicial

19  process.

20          Their case has been dismissed, identical cases, four

21  or five times.  And all the Sieverdings do -- and it's

22  Mrs. Sieverding, it's not Mr. Sieverding -- is thumb their nose

23  at the judicial system.

24          And the sanctions that Mr. Beall has suggested are one

25  way to try to get -- put an end to this nonsense.

1  Everybody's paying a lot of money.  We've all had to

2  hire Washington, D.C. law firm, because none of us are admitted

3  there.  And we're splitting the bill with the D.C. law firm.

4  And the lawsuits filed in Washington, D.C. are clones of what

5  you dismissed, with the exception of the last lawsuit

6  increasing the monetary demand from 13 million to 15 million

7  for some reason.

8  But -- everybody's anxiously awaiting what you're

9  going to do today.

10  *THE COURT:*  All right.

11  Mrs. Sieverding, I'm going to hear from you, and you

12  should come forward to the podium.

13  *MS. SIEVERDING:*  Can my husband come too?

14  *THE COURT:*  I'll hear from you, first.

15  *MS. SIEVERDING:*  All right.

16  First of all --

17  *THE COURT:*  No --

18  *MS. SIEVERDING:*  Okay.

19  *THE COURT:*  You're going to be allowed to make a

20  presentation, but it's not the presentation that you probably

21  have in mind, because I'm not going to listen to any more of

22  the things that are in your papers.

23  I found them to be incomprehensible.  The United

24  States Court of Appeals found them to be incomprehensible.

25  They just don't make sense.

1    What I want to know is, do you acknowledge filing the

2    seven lawsuits that have been referenced? And secondly, will

3    you dismiss those lawsuits voluntarily right now?

4        MS. SIEVERDING: The lawsuits that we have current at

5    this time are three of them. And as I understand your order,

6    which said based on those lawsuits do not conflict with your

7    order, and I don't believe that that order is a valid

8    injunction.

9        THE COURT: All right. Let me disabuse you of that

10   one. That order was entered by this court, it was affirmed by

11   the United States Court of Appeals, and it is a valid

12   injunction. So get over that, ma'am. That's not going to be a

13   good argument for you.

14       MS. SIEVERDING: It was not affirmed by the U.S. Court

15   of Appeals. We didn't appeal it, because we --

16       THE COURT: I don't care to hear argument from you on

17   that. You answer my questions. You answer whether you're

18   going to dismiss the lawsuits that haven't already been

19   dismissed, the two from the District of Columbia and the one

20   from the City and County of Denver. You answer that question

21   yes or no.

22       MS. SIEVERDING: The one in the City of Denver would

23   violate the Anti-Injunction Act. The other -- the order that

24   you issued is not in conformance with Rule 65, and therefore,

25   according to all the stuff that I spent days and weeks looking

1    up at the University of Wisconsin, it is invalid.  And I have

2    no intention of giving up my constitutional rights.

3           THE COURT:  All right.

4           You have five more minutes to make any additional

5    presentation you wish to make.

6           MS. SIEVERDING:  The Tenth Circuit did not review

7    our -- the order.  We said there -- in the motion for rehearing

8    that it was too vague to be meaningless, and they did not come

9    back and correct that.

10           In construing an order, words must be given their

11    ordinary and customary meaning.

12           The order said "based on."  It did not say "based on

13    including."  It did not say "based on related."  It said,

14    "based on."  And we interpreted that as "based on" only.  So we

15    interpreted that as res judicata and that res judicata would

16    apply.

17           Ambiguities in the scope of a restraining order will

18    be resolved in the favor of the defendant.  That's Federal

19    Procedure, Lawyers Edition.

20           In all cases, waiver of the fundamental right must be

21    made intelligently and intentionally, that the person is

22    waiving the right must be fully aware of what he was doing.

23    That's the Colorado Bill of Rights.

24           We did not waive our right to go to court.

25           The duty to comply with an injunction assumes the

existence of a valid and operative order.  And disobedience may

subject the violator to contempt unless the order requires an

irretrievable surrender of constitutional guarantees.  Federal

Procedure, Lawyers Edition.

Access to the Court is a constitutional guarantee.  A

federal suit is not barred merely because the holding in such a

case may be *res judicata*.  Federal Procedure, Lawyers Edition.

The "reasons" requirement of the Federal Rules of

Procedure 65(d) is satisfied by an order which recites the --

that irreparable injury may result if an injunction does not

issue.  Where reasons are not set forth, Rule 65(d) is

violated.

Basic fairness requires that those subject to such

orders receive explicit notice of what conduct is outlawed, and

the party enjoined must be able to ascertain from the four

corners of the order precisely what acts are forbidden.

Injunctive relief will not be granted in the absence

of a actual or threatened violation of a legal right.

And this is our legal right here, albeit a legal right

to have our grievances redressed and to have full procedures,

which involves statement of stipulated facts and disputed

facts.

An order granting an injunction falls short of

compliance with 65(d) where the Court adopts and requires the

adoption, which contains injunction order -- which it did not.

1   It did not use the word "injunction." Did not have the notice,

2   hearing, findings. Did not weigh our rights versus their

3   rights, and it was vague.

4           An injunction must describe in reasonable detail, not

5   by reference to the complaint or other document -- which would

6   include the Magistrate's R & R -- the act or acts sought to be

7   restrained.

8           This requirement is to be strictly construed, if by

9   reason of not complying with Rule 65(d) a ruling issued by the

10  District Court is not an injunction. It places the defendant

11  under no obligation. Federal Procedure 47.30.

12          Rule 65(e) requires every order granting an injunction

13  and every restraining order set forth the reasons for its

14  issuance, be specific in terms, describe in reasonable detail

15  without reference to the complaint.

16          The requirement that every order granting an

17  injunction recite the reasons for its issuance is a common

18  sense rule imposed so that the parties will know why and on

19  what the actual basis the Court acts. The requirement is also

20  to aid the trial court by requiring it to marshal the evidence

21  and the appellate court to aid the appellate court in review.

22  And this rule is mandatory.

23          Without specific facts, the Court cannot draft an

24  order granting injunctive relief which will comply with 65(d).

25          Rule 65(a) requires notice before the issuance of a

1   preliminary injunction.  And notice implies a hearing.  The
2   Court should hold some sort of evidentiary hearing prior to
3   issuing a preliminary injunction where there is a dispute
4   regarding the facts.

5           And after the magistrate came out with that R & R, we
6   filed a motion and asked for evidence of any misconduct on our
7   part.  And that motion was never ruled on, and none of the
8   defendants ever submitted anything.

9           And there was something in the R & R where the
10  magistrate claimed that there were two letters that were sent
11  to him.  We never got copies of those letters.  And we sent in
12  a motion and asked for copies that he referred to.  They never
13  ruled on that, never got that.

14          65(i) is explicit, no preliminary injunction is issued
15  without notice.  The Court is required to make findings of
16  fact, stated conclusions of law.

17          And the stringent requirements of Rule 65 cannot be
18  circumvented.  An order is unconstitutional if it's excess of
19  jurisdiction.

20          The Anti-Injunction Act is controlled by federal law.
21  The Act is to be strictly construed and may not be enlarged by
22  loose statutory construction or whittled away by judicial
23  improvisation.

24          The Government cannot force the defendant to choose
25  between two constitutionally protected rights.  We have a right

1  to go to court, and we had a right to have a court of appeals

2  review our case on the basis of what our case was about, not on

3  interposing a new issue as to whether we had a right to sue.

4          Procedure is important in the use of discretionary

5  powers.  And the essence of a fair procedure is the opportunity

6  to be heard before the decision and to know the basis of the

7  decision.

8          A person subject to a court's injunction may elect

9  whether to challenge the constitutional validity of the

10 injunction when it is issued or to reserve that claim until a

11 violation of the injunction is charged as a contempt of

12 court --

13         THE COURT:  Ms. Sieverding.

14         MS. SIEVERDING:  This is Supreme Court.

15         THE COURT:  Ms. Sieverding, your time is up.

16         MS. SIEVERDING:  Can I give you these things too?

17         THE COURT:  Well, you can file them with the clerk.

18         MS. SIEVERDING:  What this is --

19         THE COURT:  File them with the clerk.

20         MS. SIEVERDING:  Okay.

21         THE COURT:  Now, what you say is exactly what I told

22 you I wasn't going to hear, and that is the same thing that you

23 have submitted to this court, to the magistrate judge, to the

24 Court of Appeals, and to every other court you've been in.

25         So let me just tell you in plain language, I have

1  three United States Marshals here ready to put you in jail.

2  And I am determined to do so, but reluctant to do so.

3      So I'll ask you one last time, will you withdraw these

4  lawsuits voluntarily?

5      *MS. SIEVERDING:*  We proceed with the lawsuits under

6  the Federal Rules of Civil Procedure.

7      *THE COURT:*  All right.  I take that to be a no.

8      You may be seated.

9      As the Court announced at the beginning of this

10  hearing, the matter is before the Court on --

11      *MR. BEALL:*  Your Honor, if I may interject.  I'm

12  sorry.  I don't mean to be improper, but --

13      *THE COURT:*  You need to rise.

14      *MR. BEALL:*  May it please the Court.  At least for

15  purposes of Mr. Sieverding's due process rights, I believe he

16  needs to be given an opportunity to speak.

17      *THE COURT:*  Well, I will give him an opportunity.

18      *MR. BEALL:*  Thank you.

19      *THE COURT:*  But first we're going to deal with

20  Mrs. Sieverding.

21      *MR. BEALL:*  I apologize.

22      *THE COURT:*  As Mr. Brougham pointed out, it's evident

23  from the materials that have been filed that Mrs. Sieverding is

24  driving this, and so that's why I'm proceeding with her first.

25      On October 14, 2003, the United States Magistrate

1    Judge assigned to work on this case made a recommendation for
2    dismissal of all claims against all defendants and
3    recommendation that the plaintiffs be ordered to pay attorneys'
4    fees and costs.
5         In addition, as part of that recommendation, the
6    magistrate judge said, in order to -- recommended, in order to
7    prevent further abusive litigation by the plaintiffs, I
8    recommend that they be enjoined from filing any further
9    lawsuits that relate to any of the series of events that
10   occurred in Steamboat Springs or that form the basis and
11   backdrop for this case unless plaintiffs are represented by
12   counsel.
13        On March 19, 2004, this court affirmed the decision of
14   the magistrate judge and adopted that extensive analysis as the
15   Court's opinion in this case.
16        The Court ordered that the case be dismissed with
17   prejudice, that the motions for sanctions be granted, and that
18   plaintiffs be enjoined and prohibited from commencing
19   litigation in this or any other court based on the series of
20   transactions described in this case unless they are represented
21   by counsel.
22        Based on the papers that have been filed in this case
23   and on the undisputed representations of defense counsel, the
24   Court finds that that order, its order entered March 19, 2004,
25   has been violated numerous times.

1        There are two cases in Minnesota involving violations

2   of the order, one case in the Northern District of Illinois

3   involving the violation of the order.  All of those cases have

4   been dismissed, and all of those cases were dismissed after the

5   Court cited this court's order as the basis for dismissal.

6        As I say, those actions violated the order.  But at

7   this point, they have been dismissed and nothing more remains

8   to be done.

9        There are three cases that evidently remain pending.

10  There are two cases from the District of Columbia, one filed on

11  the 27th of June, 2005, one filed on the 22nd of August,

12  2005.  The defendants have not yet responded to those cases.

13  Another case has been filed in the District Court for the City

14  and County of Denver, and that evidently was filed last month.

15       The Court finds based on the undisputed record that

16  these filings, as well, violate the court's order that the

17  plaintiffs not file lawsuits unless represented by counsel when

18  the lawsuits are based on the series of events that occurred in

19  Steamboat Springs, Colorado, or formed the backdrop for this

20  lawsuit.

21       The Court finds the plaintiff Kay Sieverding to be in

22  civil contempt of court.  It is clear that there exists a valid

23  court order.  This court's order is affirmed by the United

24  States Court of Appeals, and there has been no further review

25  of that order.  There can be no dispute that Ms. Sieverding had

1   knowledge of the order.  And as I have found, there can be no

2   dispute that she has disobeyed the order by filing the lawsuits

3   mentioned, three of which remain pending.

4          The Court has asked her whether she will voluntarily

5   dismiss those lawsuits, and she has said that she would not.

6          Accordingly, upon the finding that Kay Sieverding is

7   in contempt of court, the Court will remand her to the custody

8   of the United States Marshal for the District of Colorado to be

9   incarcerated until she purges herself of the contempt of court

10  by agreeing voluntarily to dismiss the lawsuits, the two

11  lawsuits pending in the District of Columbia and the lawsuit

12  pending in the District Court for the City and County of

13  Denver.

14         The marshals will do their duty.

15         *MS. SIEVERDING:*  Can I say one more thing?

16         *THE COURT:*  No.

17         (Plaintiff Kay Sieverding out-of-court room by

18  marshals.)

19         Mr. Sieverding, come forward, please.

20         I'm going to allow you to be heard.  But as I told

21  your wife, I don't want to hear more of what has been filed in

22  the papers that you've filed.  I want to know from you whether

23  you participated in the filing of these lawsuits, as indicated

24  by your signature on the various lawsuits.

25         *MR. SIEVERDING:*  Yes.

1          THE COURT:  I also want to know whether you will

2     voluntarily dismiss the remaining lawsuits at this time.

3          MR. SIEVERDING:  I don't know that I -- I mean, could

4     I do it individually, without Kay?

5          THE COURT:  You can -- you're an individual.  You

6     don't act for her.  She doesn't act for you.  If you will

7     withdraw these lawsuits, you can do it as an individual.  The

8     lawsuits will remain pending as to her until she dismisses

9     them.  But at this moment, you can withdraw the lawsuits and

10    purge yourself of a possible contempt.

11         MR. SIEVERDING:  I see.  If I don't do it, then you'll

12    lock me up until I do, basically?

13         THE COURT:  You saw what happened to your wife.

14         MR. SIEVERDING:  Yeah.

15         It wouldn't be possible to confer with her first,

16    or --

17         THE COURT:  No.

18         MR. SIEVERDING:  So basically, we'd remain in jail, no

19    matter -- for until we sign -- until we agree to dismiss these

20    cases?

21         THE COURT:  Basically, yeah.

22         Mr. Sieverding, this shouldn't be a hard decision for

23    you.

24         MR. SIEVERDING:  Well, it is, because --

25         THE COURT:  You've been -- you've received every

1    benefit of litigation in the state courts and in this court and

2    in the Court of Appeals.  And --

3              MR. SIEVERDING:  That isn't true.

4              THE COURT:  You have simply joined in your wife's

5    gross abuse of the judicial system.

6              MR. SIEVERDING:  No, we did not abuse the judicial

7    system.

8              THE COURT:  Well, I'm not interested in arguing with

9    you about it.  You make a decision right now.  And I have

10   another matter, so I can't wait that long.

11             MR. SIEVERDING:  Okay.  I'll withdraw my signature.

12             THE COURT:  I'm sorry?

13             MR. SIEVERDING:  I'll withdraw from the three cases.

14             THE COURT:  All right.  Now, are the three case we've

15   got are the only three cases that are at issue, right, at the

16   moment?

17             MR. BEALL:  Your Honor, those are the only cases that

18   we are aware of.

19             THE COURT:  All right.

20             And, Mr. Sieverding, stand at the podium.

21             You will file on your behalf a motion to voluntarily

22   dismiss those three cases, and you will do it by the end of

23   next week.  In other words, you will do it by Friday,

24   September 9, okay?

25             MR. SIEVERDING:  Okay.

1          THE COURT:  And the Court is relying on your

2   representation that you will withdraw the lawsuits.  If you

3   fail to withdraw those lawsuits, the next time you're in this

4   court you better be prepared with your toothbrush, because you

5   will be going to jail.

6          Do you understand that?

7          MR. SIEVERDING:  Yes.

8          THE COURT:  Do you have any problem with giving him

9   until the 7th to get them dismissed, counsel?

10         MR. BEALL:  Your Honor, the defendants have until the

11  7th, as opposed to the 9th, to respond.  But in light of

12  the fact that Mrs. Sieverding has not indicated an agreement to

13  withdraw, we will still have to respond to those cases.  So

14  Mr. Sieverding's dismissal on his own behalf on the 9th, we

15  can take into account, but it will not absolve us in that

16  respect.

17         THE COURT:  Well, I understand that.  But at this

18  point --

19         MR. BEALL:  I understand --

20         THE COURT:  -- what you've really got is a case for

21  continued attorneys' fees against her, from this point forward,

22  but not against him.

23         MR. BEALL:  That's correct, Your Honor.

24         THE COURT:  Seems to me.

25         All right.  Anything further?

1    MR. *SIEVERDING:* Not for me, Your Honor.

2    THE COURT: All right.

3    Mr. Sieverding, do you understand what you have to do?

4    MR. *SIEVERDING:* Yes.

5    THE COURT: And you're promising me you'll do it?

6    MR. *SIEVERDING:* Yes.

7    THE COURT: All right. You're free to go.

8    Court will be in recess in this case.

9    (Hearing concluded at 3:44 p.m.)

10                 REPORTER'S CERTIFICATE

11

12    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

13

14    Dated at Denver, Colorado, this 14th day of September,

15    2005.

16

17                         Therese Lindblom, CSR, RMR, CRR

18

19

20

21

22

23

24

25