UNITED STATES COURT DISTRICT OF COLUMBIA

Sieverding                                              05-cv-02122

V.                                                      Judge Urbina

ABA, White and Case,
and O'Brien, Butler, McConihie & Schaeffer

Plaintiff's motion for Reconsideration of sua sponte dismissal on the basis of res judicata

**Oral hearing requested.**

---

**(This motion was previously received by the court on 8/1/06 express mail EO 923 358 095 U.S. but not docketed. The clerks said they did not realize it was a motion for reconsideration since it also asked for a formal reply and summary judgment. Plaintiff subsequently changed the description of the action but no other words. If she had been allowed to use ECF the drop down menu would have directed plaintiff to pick a motion for reconsideration and would have avoided that problem.)**

*Kay 8-7-06*
*USPS receipt*
*See attached*

---

This action, 05-cv-02122, David and Kay Sieverding v. the ABA, White and Case LLP and O'Brien, Butler, McConihie and Schaefer, is about the civil conspiracy to jail Kay Sieverding and threaten David Sieverding in order to gain advantage in related lawsuits about earlier events. None of the related lawsuits had claims for jailing. All of the related lawsuits were filed before plaintiff was jailed. This action is about the jailing of plaintiff from 9/2/05 to 1/5/06. That was the only time plaintiff was in jail. This

RECEIVED
AUG 8 2006
1
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

lawsuit does not include claims for events in Steamboat Springs CO, for defamation on the Internet, nor for the spoliation of 02-1950. Thus, there is no possible res judicata effect of the other actions on this one. Furthermore, none of the other actions ever met the statutory requirements of their forum states to be considered a final judgment and bar further litigation on any basis.

Courts are not allowed sua sponte dismissal. The judges have an obligation to sit. In a somewhat similar facts involving:

"Essentially, the claim was that the injunction had been corruptly issued as the result of a conspiracy between the judge and the other defendants causing a deprivation....without due process of law" (Supreme Court opinion Dennis v. Sparks, 499 U.S. 1980 p 25-26 in bold attached (page 15 of this filing))

The Supreme Court ruled:

As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged (499 U.S. Page 28) with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970); United States v. Price, 383 U.S. 787, 794 (1966).*fn4 Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators."*fn5 [ 449 U.S. Page 29]
Indeed, his immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed. Stump v. Sparkman, 435 U.S. 349, 356 (1978); Bradley v. Fisher, supra, at 352, 357. Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 as it has been construed in our prior cases. The complaint in this case was not defective for failure to allege that the private defendants were acting under color of state law, and the Court of Appeals was correct in rejecting its prior case authority to the contrary. The action against private parties accused of conspiring with a judge is not subject to dismissal" (see attached opinion of the unanimous Supreme Court, Dennis v. Sparks 499 U.S. 1980)

2

It is immaterial that Judge Nottingham was a federal judge and not a state judge because he was acting as a state judge by sitting in diversity and because state actors participated in the jailing (David Brougham on contract with State of Colorado to defend McLimans, Wittemyer, St. James, and Lance.) Judge Urbina is obligated by the Dennis v. Sparks case to hear this case, he cannot dismiss on the basis of disbelief or political pressure to defense his colleagues.

Res judicata is an affirmative defense that must be pled under Rule 12 with a formal Reply that stipulates to the facts. A judge cannot appear as an agent for the defense. In order for Res Judicata to be a basis for dismissal, it is required that the defense, not the judge, stipulate to the FACTS, and when the plaintiff is a FREE CITIZEN there must be an oral hearing when requested. The defense have the burden of proof that the previous decision cited was adjudicated to a final decision compliant with the statutes of the forum state, the same facts, and claim preclusive. The judge can't assume the defense burden.

When plaintiff claimed in her 02-1950 and 05-01672 lawsuits that the ABA was a proximate cause to the tortious conduct by the attorneys in Colorado (that hurt her previously to filing this action), she thought that all she needed to do was show the facts connecting their actions to her damages. If she had known that they could and would put her in jail for petitioning the government for redress of her grievances, she wouldn't have petitioned government. The ABA must be one of the world's most powerful organizations because so many important people are members. They are completely unlicensed, have no public input, pay no taxes, and are allowed to have private meetings with government officials.

Plaintiff can't take back the decision she made in 2003 to include the ABA as a defendant in 02-1950. They seem to regret having her put in jail but have offered no compensation. Being in jail, and having that jailing broadcast and fraudulently described all over the Internet, has damaged plaintiff and her family in many ways. The defense does not dispute the amount of plaintiff's claims $4 million plus $20,000 for every day from 10/10/05 to 1/5/06. (She was released from jail without any assistance from the defendants or their associates based solely on her own efforts). From 10/10/05 to 10/31/05 is 21 days. November had 30 days. December had 31 days. And she was in jail in Jan for 4 whole days. So there were 86 additional days at $20,000 per day and that calculates to $1,720,000. So the undisputed demand is $5,720,000.

Under the law of civil conspiracy, liability is joint and several. It is not necessary to adjudicate against all of the conspirators. An overt act by one is an overt act by all. It was not necessary for the defendants to personally attend the hearing in Colorado and personally stand up and request plaintiff is jailed nor that they formally sign the fraudulent criminal complaint claiming that plaintiff had violated a valid order.

Before plaintiff was jailed, the 05-02122 defendants had many conversations with the Colorado actors about their joint defense plans. They knew about the plan to jail Kay Sieverding before it happened. After Kay Sieverding was jailed, the defendants in this action explicitly threatened David Sieverding with jail if he did not immediately withdraw from the other lawsuits. The defendants in this action ratified the jailing, and, according to American Jurisprudence, that is all that is necessary to establish liability for unlawful imprisonment. After plaintiff was jailed, the ABA counsel Patricia Larson used interstate carrier to call her agent Christopher Beall to discuss the details.

4

Plaintiff explicitly requested assistance from the defendants in this action to secure her release from jail and they refused, thus establishing their liability. They refused even after plaintiff complained that other inmates were calling her a "snitch-bitch" and threatening her physically because they found out she had reported drug dealers. They knew, also, that plaintiff had been jailed without an evidentiary hearing and that that was required along with a complaint stating what law she was accused of violating and what the probable cause was to believe she had violated a law.

Chris Beall was these defendants' co-conspirator and agent. Chris Beall stated fraudulently when plaintiff was grabbed and jailed that she was not entitled to an evidentiary hearing. The Rules of Professional Conduct required them to state otherwise but they did not, although they had 4 months to do so. O'Brien, Butler, McConihie and Schaeffer, White and Case, and the Colorado Attorney General's Office were bound by the Rules of Professional Conduct because of the oath their agents signed when they appeared in 05-01283 and 05-01672. The ABA was bound by its obligation to supervise its agents, its professional expertise in the field of law, its appearance directly in the District of Colorado, its knowledge of the unlawful imprisonment, its acceptance of $16 million per annum from the U.S. government in its capacity as a legal expertise organization, and its authorship of the Model Rules of Professional Conduct,

The defendants in this action knew that David and Kay Sieverding had been told by their agent, Christopher Beall, that she was not entitled to a lawyer in their action to put her in jail and keep her in jail. The defendants in this action knew that Kay Sieverding was entitled to a lawyer not only during the hearing but also during her entire jailing. The defendants in this action knew that the Federal Public Defenders Office had refused

her service on the grounds that she had not been accused of committing a crime. They knew that other lawyers had also refused service. The defendants in this action knew that she had applied to Colorado Judge Nottingham to have a lawyer appointed for her and that that was her explicit legal right under both the codes in Colorado for remedial contempt (Colorado Revised Statues Court Procedure Rule 107) and the Federal Rules of Criminal Procedure. The defendants in this action knew that Judge Nottingham had refused to appoint a lawyer for her, had refused to set bail, and had refused to allow her out of jail even for a few days to find a lawyer.

The defendants in this action knew that the injunction was never valid and that an injunction that violated the Colorado and Wisconsin constitutions and the U.S. Judiciary Act could never be valid. The defendants in this action knew that Colorado Judge Nottingham was legally obligated to tell plaintiff how she could get out of jail and that he refused to do so even when she explicitly asked him to. The first sentence of the complaint is "the ABA, White and Case, and O'Brien Butler conspired with Colorado Federal Judge Nottingham to obstruct justice." They have not disputed that they conspired with Judge Nottingham to obstruct justice. Thus, Judge Nottingham was also the agent of these defendants when he ignored the Wisconsin and Colorado constitutions Judiciary Act, the procedures for remedial contempt, the Rules of Civil Procedure, the Rules of Criminal Procedure and the U.S. codes both Title 28 and Title 18 to jail plaintiff to inhibit her presentment in another court.

The State of Colorado participated in the civil conspiracy through the form of Daniel Moore who ratified the jailing even though she knew that a person cannot be legally jailed except for violating a law of the United States whether it is called criminal

procedure or remedial contempt. Furthermore, the State of Colorado contracted David Brougham as their agent and he was acting as their agent when he explicitly verbally ratified Christopher Beall's and Traci Van Pelt's oral requests to have plaintiff jailed.

The defendants in this action have not claimed attorney confidentiality, which is available only to the client not the lawyer. The defendants in this action have not disputed any of plaintiff's statements of fact in her complaint and motion for summary judgment and those facts are now all admitted. Furthermore, they no longer claim that it is a jail-able offence/ criminal act for plaintiff to appear in this action.

White and Case fraudulently submitted a 1972 Wisconsin district court case espousing attorney immunity as a legal authority. The facts of that case were much different than this case. Also the Wisconsin Supreme Court and the Wisconsin Appellate Court in cases that they were already aware of overruled that case. They did not "Shepardize", not from lack of knowledge, but from deliberate attempt to deceive.

The Court is obligated to take as true the undisputed facts in the Complaint. They are adequate as is for the Court to award summary judgment in the undisputed amount of $5.72 million. Rule 56 uses the word "shall" which implies a mandatory action. The Judge is obligated to rule on plaintiff's motion for summary judgment. Congress specifically granted plaintiffs a right to have their summary judgment motions heard before a case is dismissed. Plaintiff is not a prisoner and is free to attend the hearing. The defenses counsel no longer claim that her attendance in continuing this action is unlawful.

7

The undisputed facts of the case establish that these three defendants participated in a civil conspiracy. The defendants in this case did this both for an unlawful purpose, in fact a criminal purpose, using force and intimidation to deter presentment in court, and with an unlawful means, jailing without the required procedures of the Federal Rules of Criminal Procedure and the Colorado Revised Statues Court Proceedings for Contempt Rule 107. They relied on very substantial and shocking due process deviations from the Federal Rules of Civil Procedure, the Colorado Revise Statutes Court Proceedings, the Colorado and Washington Rules of Professional Conduct, the U.S., Wisconsin, and Colorado constitutions and from the D.C. enabling and governing statutes as well.

The UNDISPUTED FACTS, excerpted below, establish these three defendants joint and several liability. Because plaintiff already applied for summary judgment and the defendants did not dispute the amount of the Sieverdings stated damages (all of which are collectible by Kay Sieverding since she and her husband have a community property contract), the Court is obligated to award the $5.72 million without further delay.

Excerpt of UNDISPUTED FACTS:

"the ABA, White and Case, LLP, and O'Brien, Butler (McConihie and Schaeffer) conspired with Colorado Federal Court Judge Edward Nottingham to obstruct justice." (Complaint, p.1. par 1.).... Through the threat of imprisonment this conspiracy intentionally sought to force both David Sieverding and Kay Sieverding to withdraw from court proceedings...(violated 42 U.S.C. section 1985 by jailing Kay Sieverding in order to) interfere with the proficiency of her efforts to participate in court proceedings"...(Complaint page 2, paragraph 2)...

"The standard commonly used West Law Hornbook Textbook the Law of Torts by Dan Dobbs states clearly that lawyers are liable to a third party for prosecuting a case in ways not (allowed) by law just as if they ran the third party over with their car in the parking lot." (Complaint, Page 5).

The ABA lends its endorsement to law schools that base their tort studies on that particular book and the defendant law firms hire lawyers who have studied Dan Dobb's

8

**The Law of Torts** as undisputable law. This principle is included in all of the states' bar exams and a lawyer is not supposed to be admitted to practice if he doesn't know this. This principle of a lawyer's duty to abide by the law is inherent in the study of the history of law and is a required component of formal legal education. Explicit in the Rules of Evidence is that all people can be witnesses.

42 U.S.C. Section 1985 specifically gives an:

"action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators…who conspire to deter by force, intimidation or threat, any party or witness in any court of the United States from attending such court, or from testifying therein freely, fully and truthfully….with intent to deny to any citizen the equal protection of the laws or to injure him or his property for lawfully enforcing or attempting to enforce the right of any person…to the equal protection of the laws" (see Complaint page 6)

"Several related pro se actions…all …allege judicial misconduct…in none… were the facts disputed…In none…were perjury or fraud by the Sieverdings alleged." (FACTS 11-13.)

"The combined demand (of the related cases) with interest exceeds $20 million…in both …the Sieverdings filed summary judgment in the sum certain amounts…in neither…did the defense counsel dispute the amount of their claims…in both…the economic personal and punitive damage (claim amounts) were within the ranges allowed by law….Under the principles of Waiver and Equitable Estoppel the defendants … can no longer dispute the facts…" (FACTS 15-19)

"The defendants never believed there was a legitimate order" (FACT 38.)

"In July 2005, Sieverding had an email exchange with the ABA's in-house counsel Patricia Larson. Sieverding asked Pat Larson to produce the required components of a Rule 65 injunction but Larson was unable to do so" (FACT 41)
"Before being sent to jail, Sieverding emailed to the counsel at the defendants (Lamm and Kernan) and asked them to produce the so-called injunction with the Rule 65 requirements but neither did" (FACT 42).

"Faegre's 02-cv-1950 bills itemized conferring with "Brien, Butler" (FACT 60)

"The Anti-Injunction Act and the All Write Acts are both specific that a plaintiff cannot be jailed for filing a lawsuit…A disbarred lawyer cannot be jailed for filing a lawsuit…A prisoner appearing in forma pauperis, who has used up their free frivolous filings, cannot be criminally punished for filing another…A prisoner who pays …can file

9

as many actions as they deem appropriate…The history of American Law has been to support access to the courts and all high court decisions regarding access to court have supported access…not only are the courts required to consider a complaint that may be res judicata but the defense has the burden of proof. Complaints to overturn judgment on the basis of fraud can be filed years later. The Supreme Court specifically ruled in NAACP v. Button that the courts cannot dictate the practice of law." (FACT 64-67)

"Jailing someone for filing a lawsuit is in the dark regions of American history along with lynching" (FACT 68)

"During the time that Kay Sieverding has been in jail, she has not been summoned for additional court hearings, as is normal in a civil contempt holding…. On 9/2/05 neither Sieverding was allowed to cross-examine their accusers…Sieverding quoted Federal Procedure Lawyers Edition adequately to prove that there was no valid injunction…. there is no time limit for contesting an injunction (TROY v. COCHRAN)…Judges do not have a common law power to label acts as criminal…Jail is a criminal penalty…." (FACTS 74-79)

"Lawyers from White and Case and O'Brien, Butler filed …proclaiming jubilantly that Kay Sieverding is in jail" (FACT 85)

"White and Case and O'Brien, Butler made obvious fraudulent statements that a withdrawal from a civil suit can be "voluntary" if it is motivated by a jailing threat or as a condition of getting out of jail…" (FACT 86).

"The letter from ABA in-house assistant counsel Patricia Larson to Judge Nottingham…asking Judge Nottingham to suspend Rule 56 procedure and to relay messages through his clerk" (FACT 101)

"The 05-01283 complaint discusses the invalid injunction and notes that in the 10th circuit, a special form for injunctions is required with a the basis in law and statement of irreparable harm, but it was not filed. Thus, it was impossible for the lawyers defending 05-01283 not to know that the 02-1950 litigation was conducted fraudulently, that the injunction was invalid and that it is illegal to jail a citizen to coerce them to withdraw from a civil lawsuit." FACTS 107-108

"White and Case and O'Brien, Butler and the ABA have an obligation, reinforced by the Code of Professional Conduct to protest the jailing of Kay Sieverding and seek for release, (they) have done nothing to seek the release of …Sieverding even though they …have probable cause to believe that it is obstruction of justice and wrongful imprisonment and no one else is defending her. Furthermore, Sieverding repeatedly requested the help of the ABA and the o2-1950 defense counsel and according to the Colorado Revised Statues, appeal from contempt is not allowed, so Kay Sieverding has no easy way to free herself, but the ABA could secure her release through a simple motion." FACTS 109-110.

"The defendants seek to benefit from Sieverding's jailing" FACT 111.

"David Sieverding and the Sieverding children are adversely affected...stressed out...personally threatened with jail.... lose faith ...." FACTS 111, 113-115.

"Jail is unpleasant, demeaning and dangerous....Sieverding's health and life is at risk...she is kept with former IV drug users ...some...have hepatitis....(one) bit another ....in a fistfight...many fights...Sieverding has been threatened." FACTS 111 and 116)

"CIRSA, one organization paying 02-1950 defense counsel Dave Brougham bills, is a RICO systematically engaging in bad faith insurance in violation of CO law...it systematically refuses to pay citizen claims under its public officials errors and omissions coverage...(its) audit report is not signed by any specific auditors...doesn't disclose CEO compensation....doesn't disclose directors names....doesn't appear to file with the IRS....does not appear to be registered with the Colorado Secretary of State as a corporation, partnership, charity, government or government agency" FACTS 118.

"In 02-1950, the defense counsel asked for and received a sanction in violation of State and Federal law." FACTS 121.

"The sanctions requested by the 02-1950 defense counsel and ratified by the ABA, White and Case, and O'Brien, Butler (McConihie and Schaefer) were criminally solicited and were not legal under Colorado law" FACTS 127.

I declare under penalty of perjury that the forgoing is correct. Executed on July 31, 2006

Kay S——       8-7-06    resubmission

Kay Sieverding, 641 Basswood Ave., Verona, WI 53593 phone 608 848 5721.

Attachments:

Certificate of conference: Plaintiff conferred with defense counsel by email but has received no response although the requested response date was three days ago and plaintiff has been receiving her email, phone calls and faxes.

Supreme Court Opinion Dennis v. Sparks

Certificate of Service

> From: sieverding.kay@slides.com
> Subject: confer motion 05-02122
> Date: July 26, 2006 11:52:06 PM CDT
> To: Jschaefer@obmslaw.com
> Cc: Clamm@whitecase.com, Fpanopoulos@whitecase.com

Dear defense counsel

Please confer and let me know by close of business Friday if you object to

a.) a motion for reconsideration of dismiss based on

1.) Court has duty to litigate

2.) As a crime victim I need protection. Under administrative law, my status as a crime victim must be recognized.

3.) Not res judicata because

02-1950 not a final judgment according to Co law and therefore can't be res judicata

02-1950 not a decision on the merits because no facts admitted, defense billed for conference calls with the magistrate, and defense billed to review court orders before they were issued, showing ex parte collusion.

The claims and events in 02-1950 and 05-2122 completely different. The events causing the damages in 05-2122 happened more than two years after 02-1950 dismissed. 02-1950 includes
no claims for false imprisonment

b.) a motion for reconsideration of failure to hear and grant summary judgment to plaintiff because

liability for conspiracy for false imprisonment requires an overt act by only one of the conspirators

liability for conspiracy for false imprisonment can be based on ratification and other conditions described in American Jurisprudence, see motion submitted to ABA and o2-1950 defendants about it through 02-1950 ECF last fall

conspiracy for failure to aid

ABA had duty stemming from the code of professional conduct and the fact that the ABA authored the code of professional conduct

The bills submitted by Faegre and Benson show that O'Brien Butler, McConihie and

12

Schaeffer controlled the 02-1950 defense strategy

The publication of the ABA litigation section advising that litigants win against pro se litigants by filing multiple motions for more definite statement and then getting an injunction against pro se litigation shows that the ABA's intention to invade the rights of citizens and ignore the Judiciary Act.

Pat Larson's recent filing in the 10th Circuit did not cite a single reason to indicate that she ever believed there was a valid injunction

The ABA was not asked to put up a bond for an injunction which they know is a requirement

White and Case, Pat Larson, and O'Brien Butler all failed to identify a valid injunction when I emailed to you and requested.

Beall's bills showed Pat Larson called him to discuss the Sept contempt of court hearing.

Also, I would greatly appreciate it if you would email to me that you don't plan to have me killed, jailed, or otherwise prevented from testifying in court.

Kay Sieverding
641 basswood Ave
Verona, WI 53593
608 848 5721

DENNIS v. SPARKS ET AL., 101 S. Ct. 183, 449 U.S. 24 (U.S. 11/17/1980)

SUPREME COURT OF THE UNITED STATES

No. 79-1186

101 S. Ct. 183, 449 U.S. 24, 66 L. Ed. 2d 185, 49 U.S.L.W. 4001, 1980.SCT.44039
http://www.versuslaw.com

decided: November 17, 1980.

DENNIS
v.
SPARKS ET AL., DBA SIDNEY A. SPARKS, TRUSTEE

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Finley L. Edmonds argued the cause and filed a brief for petitioner.

Garland F. Smith argued the cause and filed a brief for respondents.

White, J., delivered the opinion for a unanimous Court.

Author: White

[ 449 U.S. Page 25]

JUSTICE WHITE delivered the opinion of the Court.

In January 1973, a judge of the 229th District Court of Duval County, Tex., enjoined the production of minerals from certain oil leases owned by respondents. In June 1975, the injunction was dissolved by an appellate court as having been illegally issued.

Respondents then filed a complaint in the United States District Court purporting to state a cause of action for damages under 42 U. S. C. ? 1983.*fn1 Defendants were the Duval County Ranch Co., Inc., which had obtained the injunction, the sole owner of the corporation, the judge who entered the injunction, and the two individual
[ 449 U.S. Page 26]
 sureties on the injunction bond, one of whom is now petitioner in this Court. Essentially, the claim was that the injunction had been corruptly issued as the result of a conspiracy between the judge and the other defendants, thus causing a deprivation of property, i. e., two years of oil production, without due process of law.

All defendants moved to dismiss, the judge asserting judicial immunity and the other

defendants urging dismissal for failure to allege action "under color" of state law, a necessary component of a ? 1983 cause of action. The District Court concluded that because the injunction was a judicial act within the jurisdiction of the state court, the judge was immune from liability in a ? 1983 suit, whether or not the injunction had issued as the result of a corrupt conspiracy. Relying on Haldane v. Chagnon, 345 F.2d 601 (CA9 1965), the District Court also ruled that with the dismissal of the judge the remaining defendants could not be said to have conspired under color of state law within the meaning of ? 1983. The action against them was accordingly dismissed "for failure to state a claim upon which relief could be granted.

In a per curiam opinion, a panel of the Court of Appeals for the Fifth Circuit affirmed, agreeing that the judge was immune from suit and that because "the remaining defendants, who are all private citizens, did not conspire with any person against whom a valid ? 1983 suit can be stated," Sparks v. Duval County Ranch Co., 588 F.2d 124, 126 (1979), existing authorities in the Circuit required dismissal of the claims against these defendants as well.[*fn2] The case was reconsidered en banc, prior Circuit authority was overruled and the District Court judgment was reversed insofar as it had dismissed claims against these defendants as well.[*fn2] The case was reconsidered en banc, prior Circuit authority was overruled and the District Court judgment
[ 449 U.S. Page 27]

was reversed insofar as it had dismissed claims against the defendants other than the judge. Sparks v. Duval County Ranch Co., 604 F.2d 976 (1979).
The court ruled that there was no good reason in law, logic, or policy for conferring immunity on private persons who persuaded the immune judge to exercise his jurisdiction corruptly. Because the judgment below was inconsistent with the rulings of other Courts of Appeals[*fn3] and involves an important issue, we granted the petition for certiorari. 445 U.S. 942. We now affirm.

Based on the doctrine expressed in Bradley v. Fisher, 13 Wall. 335 (1872), this Court has consistently adhered to the rule that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities. Pierson v. Ray, 386 U.S. 547 (1967); Stump v. Sparkman, 435 U.S. 349 (1978)." Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734-735 (1980). The courts below concluded that the judicial immunity doctrine required dismissal of the § 1983 action against the judge who issued the challenged injunction, and as the case comes to us, the judge has been properly dismissed from the suit on immunity grounds. It does not follow, however, that the action against the private parties accused of conspiring with the judge must also be dismissed.

As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged

[ 449 U.S. Page 28]

15

with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970); United States v. Price, 383 U.S. 787, 794 (1966).[*fn4] Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators.[*fn5] Indeed, his

[ 449 U.S. Page 29]

immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed. Stump v. Sparkman, 435 U.S. 349, 356 (1978); Bradley v. Fisher, supra, at 352, 357. Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 as it has been construed in our prior cases. The complaint in this case was not defective for failure to allege that the private defendants were acting under color of state law, and the Court of Appeals was correct in rejecting its prior case authority to the contrary.

Petitioner nevertheless insists that unless he is held to have an immunity derived from that of the judge, the latter's official immunity will be seriously eroded. We are unpersuaded. The immunities of state officials that we have recognized for purposes of § 1983 are the equivalents of those that were recognized at common law, Owen v. City of Independence, 445 U.S. 622, 637-638 (1980); Imbler v. Pachtman, 424 U.S. 409, 417 (1976); Pierson v. Ray, 386 U.S. 547, 554 (1967), and the burden is on the official claiming immunity to demonstrate his entitlement. Cf. Butz v. Economou, 438 U.S. 478, 506 (1978). Thus, in Owen v. City of Independence, supra, a municipality's claim that it could assert the immunity of its officers and agents in a § 1983 damages action was rejected since there was no basis for such a right at common law. Here, petitioner has pointed to nothing indicating that, historically, judicial immunity insulated from damages liability those private persons who corruptly conspire with the judge.[*fn6]

In Gravel v. United States, 408 U.S. 606 (1972), we recognized that the Speech or Debate Clause conferred immunity

[ 449 U.S. Page 30]

upon a Senator's aide as well as the Senator, but only in those situations where the conduct of the aide would be a protected legislative act if performed by the Senator himself. Id., at 618. Here, there could be no claim that petitioner or any of the other private parties was actually performing a judicial act or was in any sense an official aide of the judge. Not surprisingly, petitioner does not argue that judges must conspire with

16

private parties in order that judicial duties may be properly accomplished.

It is urged that if petitioner and other private co-conspirators of the judge are to be subject to § 1983 damages actions and if a case such as this is to go to trial, the charge of conspiracy and judicial corruption will necessarily be aired and decided, the consequence being that the judge, though not a party and immune from liability, will be heavily involved, very likely as a witness forced to testify about and defend his judicial conduct. It is true that, based on the Speech or Debate Clause, we have held that Members of Congress need not respond to questions about their legislative acts, Gravel v. United States, supra, at 616-617; and, in general, the scope of state legislative immunity for purposes of § 1983 has been patterned after immunity under the Speech or Debate Clause. Supreme Court of Virginia v. Consumers Union, 446 U.S., at 732-734. But there is no similar constitutionally based privilege immunizing judges from being required to testify about their judicial conduct in third-party litigation. Nor has any demonstration been made that historically the doctrine of judicial immunity not only protected the judge from liability but also excused him from responding as a witness when his co-conspirators are sued. Even if the judge were excused from testifying, it would not follow that actions against private parties must be dismissed.

Of course, testifying takes time and energy that otherwise might be devoted to judicial duties; and, if cases such as this

[ 449 U.S. Page 31]

survive initial challenge and go to trial, the judge's integrity and that of the judicial process may be at stake in such cases. But judicial immunity was not designed to insulate the judiciary from all aspects of public accountability. Judges are immune from § 1983 damages actions, but they are subject to criminal prosecutions as are other citizens. O'Shea v. Littleton, 414 U.S. 488, 503 (1974). Neither are we aware of any rule generally exempting a judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding.[*fn7] Cf. United States v. Nixon, 418 U.S. 683, 705-707 (1974).

Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption. Pierson v. Ray, supra, at 554; Bradley v. Fisher, 13 Wall., at 349, 350, n. ++. In terms of undermining a judge's independence and his judicial performance, the concern that his conduct will be examined in a collateral proceeding against those with whom he allegedly conspired, a proceeding in which he cannot be held liable for damages and which he need not defend, is not of the same order of magnitude as the prospects of being a defendant in a damages action from complaint to verdict with the attendant possibility of being held liable for damages if the factfinder mistakenly upholds the charge of malice or of a corrupt conspiracy with others. These concerns are not insubstantial, either for the judge or for the public, but we agree with the Court of Appeals that the potential harm to

the public from denying immunity to private co-conspirators

[ 449 U.S. Page 32]

is outweighed by the benefits of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury on other persons.

*fn4 In this respect, our holding in Adickes v. S. H. Kress & Co. was as follows: (footnote5) "The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; Monroe v. Pape, 365 U.S. 167 (1961); see United States v. Classic, 313 U.S. 299, 326 (1941); Screws v. United States, 325 U.S. 91, 107-111 (1945); Williams v. United States, 341 U.S. 97, 99-100 (1951). Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' United States v. Price, 383 U.S. 787, 794 (1966)." 398 U.S., at 152. (Footnote omitted.)

(footnote 6) Title 18 U. S. C. § 242, the criminal analog of § 1983, also contains a color-of-state-law requirement and we have interpreted the color-of-state-law requirement in these sections coextensively. Adickes v. S. H. Kress & Co., supra, at 152, n. 7. A state judge can be found criminally liable under § 242 although that judge may be immune from damages under § 1983. See Imbler v. Pachtman, 424 U.S. 409, 429 (1976); O'Shea v. Littleton, 414 U.S. 488, 503 (1974). In either case, the judge has acted under color of state law.

Certificate of Service

_____Kay Sieverding

*[signature]* 8-7-06

Service on the defendants through ECF and paper copies mailed on 7/31/06 to

White and Case attn Carolyn Lamm and Frank Panolpouls
701 13th St NW
Washington DC 20005-3897

O'Brien Butler McConihe and Schaefer
Attn Jeffrey Schaefer
888 17th St NW
Washington DC 20006-3939



Home | Help | Sign In

Track & Confirm    FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **EO92 3358 095U S**
Status: **Delivered**

Your item was delivered at 1:47 pm on August 01, 2006 in WASHINGTON, DC 20001. The item was signed for by F FREE.

(Additional Details >)  (Return to USPS.com Home >)

### Track & Confirm
Enter Label/Receipt Number.

( Go > )

## Notification Options

**Track & Confirm by email**
Get current event information or updates for your item sent to you or others by email.  ( Go > )

**Proof of Delivery**
Verify who signed for your item by email, fax, or mail.  ( Go > )



POSTAL INSPECTORS
Preserving the Trust

site map   contact us   government services   jobs   National & Premier Accounts
Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use   Privacy Policy

