RECEIVED
AUG 1 5 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

United States Court District of Columbia

Sieverding                                                05-cv-021222

v.                                                        Judge Urbina

A.B.A.
_____

Plaintiff's Reply to Mr. Schaefer's Objection to Plaintiff's Motion for Reconsideration

Mr. Schaefer's motion misrepresents both the facts and the laws. Plaintiff asks that this filing also be considered a safe harbor notice for a Rule 11 motion. Because plaintiff is pro se and cannot be paid for legal work, she asks that the Rule 11 penalty be calculated at Mr. Schaefer's normal fee of $1,500 per hour and directed to the prison library at Clear Creek County Jail in Georgetown CO with plaintiff being allowed to consult with the corrections personnel on purchase of computer equipment, legal, and educational materials for prisoner use.

On page 1-2, Mr. Schaefer said that these claims should have been raised in 05-01283. That is an expansion of the pleadings because it is irrelevant as to whether the three actions filed in D.C. from May to October of 05 could have been combined even though they had different claims at different times and different respondents and would have resulted in a very long complaint with amendments because the action cited by Mr. Schaefer, 05-01283, still has not had a Jury Trial or Final Judgment nor a Reply with Stipulations of Fact, as required by law, to either the complaint or Plaintiff's Motion for Summary Judgment. Furthermore, to include the jailing related claims in the 02-1950 action cited as a basis for res judicata in 05-01283 or in the 05-01283 action was impossible since time does not go backwards. The 02-1950 complaint was filed in 2002

1

and amended in 2003. The 05-10283 complaint was filed in May and amended in June 2005. Plaintiff was not jailed until September and also received no notice that they intended to jail her until minutes before the U.S. Marshals kidnapped her even though notice of intent to jail is required 20 days before a hearing under the applicable Colorado law for remedial contempt.

The defense then had a 15 minute ex parte phone call in August with Judge Urbina's "chambers" supposedly about their motion for an extension of time until after the parties who had contracted with them had a hearing with Judge Nottingham and plaintiff in Colorado where they apparently planned in advance to make made an oral request to have plaintiff jailed. Of legal significance is that the ABA and one of the 02-1950 attorney defendants had both written to Judge Nottingham and requested ex parte conference with him and another 02-1950 defendant/defense counsel Mr. Brougham had billed to review and make phone calls about the transfer from Colorado Judge Matsch to Judge Nottingham two days before the order was issued. Judge Nottingham did not reprehend them. Mr. Brougham had also billed for some 27 calls to the court including a three-way long distance conference call with Magistrate Schlatter, Attorney Brougham and Attorney Lettunich. This is documented on both Mr. Lettunich's and Mr. Brougham's bills for the same day. Judge Nottingham accommodated their oral request although neither the rules of criminal procedure nor the rules of remedical contempt were observed.

While plaintiff was in jail, the only law book available to her was American Jurisprudence. The defense also threatened to send her husband to jail if he sent her legal materials. Their 15 year old son volunteered to the law library because he thought that

Judge Nottingham would not jail a 15 year old for going to the law library. However, the 15 year old had less library research skills then plaintiff, her husband, or a lawyer and also had to do his homework so he missed various authorities. Plaintiff did not choose to rely on a 15 year old, but had no other way to access a law library and even her son only went once to the law library. The law library in Clear Creek County Jail doesn't even have a copy of the U.S.C. Title 28, Title 18 or Title 42 even though about 40% of its prisoners are on federal contract. The Colorado office of the federal public defender's office refused her service even though she was in federal custody. They refused service on the grounds that they were not allowed to represent her because she had not been accused of a crime. Judge Nottingham, who also refused to set bail or describe under what terms and conditions she would be released from jail, also refused her explicit requests to either assign a lawyer to her or let her out of jail so she could hire a lawyer. Also, previously the defendants who contracted Mr. Schaefer had threatened a lawyer she had hired, Bill Hibbard. Therefore it would be consistent for them to threaten any lawyer she hired. Judge Nottingham was required by the rules of criminal procedure and the rules of remedial contempt to appoint a lawyer for plaintiff if she requested, which she did, and also to tell her what appeal procedures were available, which he did not, even though she requested.

The defense also threatened to jail plaintiff's husband if he paid a typist. Since there was no typewriter available in jail, plaintiff filed in court in 05-02122 in handwritten form. However, according to the docket, the Court refused to docket her filings although they sent her no explanation and did not return the filings. Some of the

3

points she would like to make were in those documents which plaintiff cannot reproduce in the 5 days available.

At Mr. Schaefer's motion, Judge Urbina then stayed the 05-01283 proceedings.

Plaintiff then filed a motion to stay the 05-02122 proceedings until she could get a ruling from the 10th Circuit that Colorado Judge Nottingham did not have the power to issue an injunction that violated the Federal Judicial Act and made the right to participate in government programs explicitly protected by U.S.C. Title 18 Section 245 criminal and punishable by jail. The 02-1950 defense counsel did not have recourse to the All Writs Act because there was no final judgment in 02-1950—there was no law or facts cited in the dismissal, no summary judgment found against plaintiff, and no jury trial, which she had requested by motion in Jan 2003 as well as by civil cover sheet (the court refuses to correct the 02-1950 docket on that matter.) In any case, if the defense had had an injunction based on the All Writs Act, which they did not, and plaintiff had then filed in another court, the other court would only have been authorized to stay the proceedings, not to dismiss them.

Since the defense counsel had a long ex parte conference call with Judge Urbina's chambers, recorded only in the defense bill, the presumption must be that the unrecorded ex parte conversation(s) with the judge's chambers was a conspiracy to obstruct justice.

When denominated as conspiracy for obstruction of justice, U.S.C. 42 Chapter 21 Section 1985, applies and says:

Section 1985. Conspiracy to interfere with civil rights
(2) Obstructing justice; intimidating party...If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the

verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws (3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire,,,for the purpose of depriving, either directly or indirectly, any person …of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State… the equal protection of the laws; or ….in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury of deprivation, against any one or more of the conspirators."

The first case cited by Mr. Schaefer is Hardison v. Alexander, 655 F. 2d 1281, 1288 (D.C. Cir 1981). Mr. Schaefer quotes one sentence explaining the purpose of the res judicata doctrine. That is like saying it is possible for a court to find someone guilty of murder and therefore the court finds this person guilty of murder. The facts of the case are completely different. That case concerned a military man who thought he was passed over for promotion. He exhausted his administrative remedies as defined by employment and military law. He then sued in federal court. He lost and then did not appeal. The Court of Appeals reported in so much detail about the various administrative hearings and previous court case and special military laws that that portion of their opinion was 2,600 words. Thus the facts of the situation are completely different. Furthermore, the procedures employed to find res judicata were completely different. The first case involved extensive briefing with stipulations to fact and discovery and apparently all the rules of civil procedure and military rules were followed exactly as written. This case

5

was dismissed without the statutory procedure and protections for plaintiffs legally required and is doubly suspect because the defense themselves billed for ex parte unrecorded conversations with Judge Urbina's chambers. Mr. Schaefer personally participated in a conspiracy to have the plaintiff jailed as shown again by the bills for conversations between himself and the Colorado actors. The defendants did not confer with plaintiff as required even though she never met the legal definition of prisoner and she had called them from jail and left messages as to how they could contact her.

The next case that Mr. Schaefer mentions is John Stanton v. District of Columbia Court of Appeals, No 96-7041, 1997 CDC 208. That case is factually much different, also, in that it concerns an ex-attorney's attempts to have his disbarment reversed. Furthermore the Court of Appeal's report supports plaintiff's arguments:

"because the D.C. courts have never considered Stanton's due process claims on the merits, there is no possibility that issue preclusion would bar them… The general principle of claim preclusion is that a final, valid judgment on the merits precludes any further litigation between the same parties on the same cause of action…"What factual grouping constitutes a 'transaction' and what groupings constitute a 'series,' " the Restatement continues, "are to be determined pragmatically," considering "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."… Federal law is clear that post-judgment events give rise to new claims, so that claim preclusion is no bar. Thus, if the plaintiff alleges a combination in restraint of trade, a new cause of action accrues each time it operates against him, and previous judgments do not bar repeated challenges….each successive enforcement of a statute-such as each year a taxpayer is subjected to a tax-creates a new cause of action…a criminal conviction under a statute leaves the defendant free not only to invoke new constitutional defenses against the statute in a subsequent criminal case but also to initiate an action seeking declaratory or injunctive relief against future applications of the statute…
    In civil litigation, too, parties may raise new issues in actions seeking to alter the playing field for future litigation, despite failure to raise them in past retrospective lawsuits…Stanton's participation in prior proceedings in which facial challenges could have been raised does not prevent him from raising those challenges now, so long as they concern post-judgment events. And in fact they do: the procedures that he assails will govern future petitions for reinstatement. To put the conclusion into the standard "cause of action" language: Litigation of the validity of one past course of conduct is not the

6

same "claim" as either (1) litigation over the validity of similar conduct occurring after the acts covered by the initial litigation (see Lawlor, 349 U.S. at 327-38; Sunnen, 333 U.S. at 597-600); or (2) litigation challenging a rule in anticipation of its possible application to similar events occurring or expected to occur after the earlier lawsuit...a party raising a facial challenge has enjoyed exceptional freedom to select the time (and perhaps forum) of litigation, and should reasonably be viewed as seeking a judgment on all future applications...one should perhaps be free to litigate a specific denial without the lawsuit's acquiring such an omnivorous (and costly) character...neither Rooker-Feldman nor claim preclusion bars Stanton's due process claims....remand the case for further proceedings" John Stanton v. District of Columbia Court of Appeals, No 96-7041, 1997 CDC 208

Thus, the Court of Appeals found that 05- 01283 cannot be a bar to 05- 02122 because 01283 considered the possibility that criminal penalties might be imposed on plaintiff illegally for performing a legal act protected specifically by U.S.C. Title 18 Section 245, the Colorado Constitution, the Wisconsin Constitution and the privileges and immunities act.

Mr. Schaeffer then claims that he can object without being particular. Mr. Schaefer writes:

"Without addressing all of the assertions and legal theories stated in plaintiff's motion for reconsideration, this Court's decision to dismiss the Complaint was determined pragmatically, grounded in examination of the facts alleged by plaintiff's claims and among other facts whether or not the facts were related in time and motivation." (p. 3)

Since Judge Urbina claims that his decision was "sua sponte", and without hearing, how does Mr. Schaefer know what the judge was thinking? The fact is that the jailing started in Sept 2006. The motivation of the conspiracy to jail plaintiff in September and the motivation of the convicted cocaine dealer in public office and the Steamboat defendants decision to conspire to criminally defame plaintiff, solicit a criminal prosecution without probable cause, convert the public road to private property, build in violation of the zoning and development acts, threaten to shoot a person who wanted to buy plaintiff's property and cover that up, threaten plaintiff's lawyer Bill

Hibbard for representing her, set off fireworks over plaintiff's property, discriminately regulate plaintiff and their property etc. were all criminally motivated acts but continued criminal motivation by a defendant or group of defendants in itself is not enough to cause claims preclusion.

Mr. Schaefer then asserts that plaintiff's claim must be dismissed on the basis of her race. That is a meaningless argument because 1985, quoted above, is not race dependent. Also, the claim is arguable under 1983 since the right to engage in litigation on the same terms as anyone else is a protected right under U.S.C. 18 Title 245 and is guaranteed to "any person" regardless of their racial background or membership in any sub class of citizens.

"Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with **any person** because he is or has been, or in order to intimidate such person or any other person or any class of persons from-- participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States". U.S.C. 18 Title 245

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, **any citizen** of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." U.S.C. 42 Chapter 21 Section 1983.

1983 is applicable because self-representation is guaranteed as a right and privilege by the Judiciary Act Section 1654. The components of state action are present because Judge Nottingham sat on the 02-1950 litigation in diversity, Denise Moore a State of Colorado employee, used Mr. Schaefer's ECF account to ratify a contempt of court hearing based on plaintiff performing a specifically legal act, and Mr. Brougham was a State of Colorado contractor when he had the 27 or more ex parte conferences with the

8

Colorado judges and ratified the jailing in the District of Colorado Court on 9/2/05. Mr. Schaefer conspired on behalf of the insurance company for The World Company, and the stated defendants in 06-01672 to have plaintiff jailed to deter her from presentment in this court. Thus additional state involvement is present because the D of Columbia is invoked in conspiracy and Mr. Schaeffer's appearance is dependent on his being licensed by the District of Columbia, acting as a state, or a state bar, or enrolled in a state approved law school.

American Jurisprudence also has 158 pages on the common law of unlawful imprisonment. That was specifically cited by plaintiff previously. It specifically states that liability for unlawful imprisonment can be based on ratification of the act, which Mr. Schaefer did while acting on the behalf of O'Brien, Butler, McConihie and Schaefer.

Mr. Schaefer contends on page 4 that plaintiffs complaint must be dismissed because her pleading is somehow deficient, in a way which he does not describe with any particularity. However, Mr. Schaefer had the opportunity to turn in a motion for more definite statement and passed on that opportunity. The Rules of Civil Procedure define a motion for more definite statement as the only remedy for a complaint's communication failure. The Supreme Court is definite on this point in a 2002 case which mages the 1998 Kansas district case cited by Mr. Schaefer irrelevant:

> "This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings… When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will

9

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims... under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case... It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.... Moreover, the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U. S. 567, 577 (1978); see also McDonnell Douglas, supra, at 802, n. 13 ("[T]he specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations"); Teamsters v. United States, 431 U. S. 324, 358 (1977) (noting that this Court "did not purport to create an inflexible formulation" for a prima facie case); Ring v. First Interstate Mortgage, Inc., 984 F. 2d 924, 927 (CA8 1993) ("[T]o measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate"). Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases... Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U. S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163, 168-169 (1993). "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, p. 76 (2d ed. 1990)... Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake.*fn3 This Court, however, has declined to extend such exceptions to other contexts. In Leatherman we stated: "[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983. Expressio unius est exclusio alterius." 507 U. S., at 168. Just as Rule 9(b) makes no mention of municipal liability under Rev. Stat. §1979, 42 U. S. C. §1983 (1994 ed., Supp. V), neither does it refer to employment discrimination. Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)... Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent

with the allegations." Hishon v. King & Spalding, 467 U. S. 69, 73 (1984). If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. See Conley, supra, at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits")... A requirement of greater specificity for particular claims is a result that "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." Leatherman, supra, at 168. Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer, 416 U. S., at 236... case is remanded for further proceedings" Swierkiewicz v. Sorema, U.S. Supreme CT, 992, 534 U.S. 506, (U.S. 02/26/2002.)

Mr. Schaefer fails to state what plaintiff's complaint for conspiracy for unlawful imprisonment and conspiracy to deprive rights has to do with Magee v. Hatch, which is a lawyer authored complaint concerning the Anti-terrorism Act.

Mr. Schaefer on page 4 asserts that plaintiffs' complaint should be dismissed for failing to address a possible immunity defense. However, plaintiffs are not supposed to anticipate defendant's possible defenses.

As discussed in plaintiff's previous filings, she is a Wisconsin resident and has sued under Wisconsin law. As quoted previously by plaintiff, The State of Wisconsin Supreme Court has directly addressed an attorney's liability for conspiracy for malicious prosecution and abuse of process and decided that attorney immunity doctrines present no defense to those claims. She also quoted case law about the civil conspiracy adequately to prove her points.

Plaintiff copied the motion to dismiss filed by Mr. Schaefer from the Court's ECF pdf (D. 4-1 filed 11/21/2005. She then used the word search command to look for the

11

terms "res judicata", "res" and "judicata" and found these terms not used. Plaintiff reviewed also the scanned 2 page D. 18 document filed by Mr. Schaefer entitled "Co-defendant O'Brien, Butler, McConihie and Schaefer's opposition to plaintiff's motion for summary judgment and found not a single use of the words "res judicata". Plaintiff also downloaded White and Case's motion to dismiss, D 5-1, and used the word search command but found not a single use of the words "res judicata" in that document either. Plaintiff also downloaded the ABAs and White and Case's reply in support of their motion to dismiss, D 9, and searched that document for the words "res judicata" but those words were not used in that document either. Plaintiff searched through the docket for use of the words res judicata before the court's sua sponte dismissal on the basis of "res judicata" but found no use of the words anywhere. As documented by this affidavit, the defendants did not plead res judicata as a defense. Therefore it is too late because plaintiff already filed a motion for summary judgment, which, under Rule 56, requires a hearing. As ruled by the D.C. Court of Appeals:

Rule 8(c) means what it says: affirmative defenses must be raised in a responsive pleading, not a dispositive motion. This requirement permits the parties to chart the course of litigation in advance of discovery and motions thereon. Because the Department did not raise the defense in a responsive pleading and did not apply to the District Court for leave to amend its answer under Rule 15(a), the Court should not, without more, have considered the defense" Geraldine Harris, Appellant v. Secretary, U.S. Department of Veteran's Affairs No. 96-5091, 1997.CDC.203, 10/10/1997

Thus, Judge Urbina was specifically forbidden to raise an affirmative defense on his own, especially after the defendants billed for a long unrecorded ex parte conference with him. Not one point that Mr. Schaefer raised in his opposition to plaintiff's motion for reconsideration of the courts order dismissing sua sponte on the basis of res judicata is supported by any cited statute or any cited case law or any other authorities that plaintiff

12

knows of.

Mr. Schaefer has violated the local rules of the Court as follows:

"We will avoid *ex parte* communications with the court, including the judge's staff, on pending matters in person (whether in social, professional, or other contexts), by telephone, and in letters and other forms of written communication, unless such unless such communications relate solely to scheduling or other non-substantive administrative matters, or are made with the consent of all parties, or are otherwise expressly authorized by law or court rule.... We will not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities... We will not request an extension of time for the purpose of unjustified delay."

As discussed herein, Mr. Schaefer has misrepresented the law and the facts. Attached bills submitted by his co-conspirator, Chris Beall, show that Mr. Schaefer's assistant, Kevin Kearnan, had a 15 minute ex parte conversation on August 15, 2005 Judge Urbina's chambers. No hearing with Judge Urbina was scheduled so the conversation was not about calendars. Plaintiff wants to believe the best of Judge Urbina and would appreciate his explanation of this 15 minute ex parte conference.

Plaintiff swears under penalty of perjury that everything in this document is true.

Executed on August 14, 2006.

Kay Sieverding, 641 Basswood Ave, Verona, WI 53593 608 848 5721

Service by ECF

IN ACCOUNT WITH

# O'BRIEN, BUTLER, MCCONIHE AND SCHAEFER

888 SEVENTEENTH STREET, N.W.

WASHINGTON, D.C. 20006-6161

Faegre & Benson LLP  
3200 Wells Fargo Center  
1700 Lincoln Street  
Denver, CO 80203  
**Attention:**

September 16, 2005

File #:   0113-001  
Inv #:    131

RE:   Sieverding v Faegre & Benson Et Al

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Aug-02-05 | Conference with JPC re: results of research. Reviewed and analyzed research. | 0.25 | 52.50 | KAK |
|  | Telephone call with ABA counsel re: possible joint defense and strategy for handling. | 0.25 | 52.50 | KAK |
| Aug-03-05 | Receipt and review of correspondence from ABA counsel re: status of service and strategy for handling. | 0.25 | 52.50 | KAK |
| Aug-09-05 | Receipt and review of draft motion for extension of time from C. Bealle. | 0.25 | 52.50 | KAK |
| Aug-10-05 | Began preparing revisions to motion for extension of time. | 0.50 | 105.00 | KAK |
| Aug-12-05 | Continued drafting memo in support of motion, proposed order, review of local court rules, Telephone call to Sieverdings re: consent to motion. | 1.25 | 262.50 | KAK |
| Aug-15-05 | Telephone call with K. Sieverding re: motion for extension of time. | 0.25 | 52.50 | KAK |
|  | Receipt and review of Sieverding's objections to motion for extension of time. Follow up correspondence with K. Sieverding. | 0.25 | 52.50 | KAK |
|  | Telephone call with C Bealle re: motion for extension of time and discussions with K. Sieverding. | 0.25 | 52.50 | KAK |

| Date | Description | Hours | Amount | Atty |
|---|---|---|---|---|
| | Drafted memo of points and authorities in support of motion. Conference with JCS re: pleadings. Revised pleadings pursuant to JCS remarks. Reviewed prior pleadings to confirm facts Placed pleadings in final form for filing. | 1.75 | 367.50 | KAK |
| | Drafted engagement letter for C. Bealle. | 0.25 | 52.50 | KAK |
| | Received and reviewed correspondence from P. Larson re: status of case. Drafted response. | 0.25 | 52.50 | KAK |
| | Prepared final revisions and filed electronically with US District Court for DC. | 1.00 | 210.00 | KAK |
| | Drafted correspondence to K. Sieverding re: Motion for Extension of Time. | 0.25 | 52.50 | KAK |
| | Telephone call from Judges Chambers re: Motion for Extension of Time. | 0.25 | 52.50 | KAK |
| Aug-16-05 | Receipt and review of e-mails from K. Sieverding re: motion for extension of time. | 0.25 | 52.50 | KAK |
| Aug-17-05 | Receipt and review of motion for extension of time from Routt County Court. | 0.25 | 52.50 | KAK |
| Aug-18-05 | Receipt and review of Sieverding's objection to Routt County's Motion to Extend. | 0.25 | 52.50 | KAK |
| | Received another e-mail from K. Sieverding with additional copy of objection to Motion. Prepared response. | 0.25 | 52.50 | KAK |
| | Receipt and review additional correspondence from K. Sieverding. | 0.25 | 52.50 | KAK |
| Aug-19-05 | Receipt and review of e-mail correspondence from K. Sieverding re: objection. Prepared response. | 0.25 | 52.50 | KAK |
| | Received additional e-mail from K. Sieverding re: filing of objection. Prepared response. | 0.25 | 52.50 | KAK |
| Aug-22-05 | Receipt and review of Order from Court granting motion for extension of time. | 0.25 | 52.50 | KAK |
| | Receipt and review of correspondence from P. Larson re: ABA responsive pleadings. Prepared response. | 0.25 | 52.50 | KAK |
| | Additional correspondence from counsel re: pleadings filed for motion for extension of time. | 0.25 | 52.50 | KAK |

Invoice # ...                                                                                     September 26, 2005

| | | | | |
|---|---|---|---|---|
| | Drafted e-mail to counsel re: recent Order. Additional correspondence with P. Larson. Steps to set up file. | 0.25 | 52.50 | KAK |
| Aug-23-05 | Receipt and review of notice of perfection of service upon ABA and Judiciary from Court. | 0.25 | 52.50 | KAK |
| | Drafted correspondence to C. Beale re: status of Sieverding case. | 0.25 | 52.50 | KAK |
| Aug-24-05 | Receipt and review of correspondence from K. Sieverding re: injunctions. | 0.25 | 52.50 | KAK |
| | Telephone call with C. Beale re: strategy for handling. Drafted e-mail to all counsel re: strategy and engagement letters. Quick research on DC procedure. | 0.75 | 157.50 | KAK |
| | Receipt and review of correspondence from D. Brougham re engagement. | 0.25 | 52.50 | KAK |
| Aug-25-05 | Receipt and review of correspondence from K. Sieverding. Drafted correspondence to C. Beall re: same. | 0.25 | 52.50 | KAK |
| | Telephone call with ABA counsel re: Court's Order and strategy for handling. | 0.25 | 52.50 | KAK |
| | Follow up call with ABA counsel re: background and filing of motion for extension of time. | 0.25 | 52.50 | KAK |
| | Receipt and review of e-mails from K. Sieverding re Objections and injunctions to file lawsuits pro se. | 0.25 | 52.50 | KAK |
| | Receipt and review of pleadings and proposed Order filed by ABA with Court. | 0.25 | 52.50 | KAK |
| | Receipt and review of draft Orders from ABA to motion for extension of time. | 0.25 | 52.50 | KAK |
| | Totals | 13.25 | $2,782.50 | |

**Total Fee & Disbursements**                                                                     $2,782.50

**Balance Now Due**                                                                               $2,782.50

TAX ID Number    52-1623745